Bryan **REYNOLDS**, Plaintiff,

v.

Charles **CONDON**, Lisa Reynolds, Barbara Orzechowski, Klass, Hanks, Stoos, Stoik & Villone, a partnership organized in the State of Iowa, Marvin J. Klass, James C. Hanks, William K. Stoos, and James R. Villone, Defendants.

No. C 94–4118.

United States District Court, N.D. Iowa, Western Division.

Nov. 3, 1995.

Order Denying Reconsideration Jan. 2, 1996.

**1498**

J. Russell Hixson of Dickinson, Mackaman, Tyler & Hagan, P.C., Des Moines, Iowa, for Plaintiff Bryan Reynolds.

Nicholas V. Critelli, Jr. of the Law Offices of Nick Critelli, P.C., Des Moines, Iowa, for Defendant Charles Condon.

Edward J. Keane of Gildemeister, Willia & Keane, Sioux City, Iowa, for Defendant Lisa Reynolds.

Maurice B. Nieland of Rawlings, Nieland, Probasco & Killinger, Sioux City, Iowa, for Defendants Barbara Orzechowski, Marvin J. Klass, James C. Hanks, William K. Stoos, James R. Villone, and the law firm of Klass, Hanks, Stoos, Stoik & Villone.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS

BENNETT, District Judge.

TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................... 1498
   A. Procedural Background ............................... 1498
   B. Factual Background ................................. 1500

II. APPLICABLE STANDARDS ..................................... 1502

III. LEGAL ANALYSIS ......................................... 1503
   A. Defendants' January 26, 1995, Motion To Dismiss ....................... 1503
   B. The Defendants' Other Motions To Dismiss ........................... 1504
      1. Is the RICO claim time-barred? ................................ 1504
      2. Sufficiency of RICO allegations ............................... 1506
         a. Purpose and scope of RICO ............................. 1506
         b. Elements Of Plaintiff's § 1962(c) RICO Claim .................... 1507
            i. RICO enterprise ................................. 1508
            ii. Conduct of the enterprise ............................ 1510
            iii. Pattern of racketeering activity ........................ 1512
            iv. Causation .................................... 1517
            v. Summary .................................... 1519
         c. RICO conspiracy ............................... 1520
   C. Lack Of A Federal Question .................................. 1521

IV. CONCLUSION .............................................. 1523

---

This lawsuit alleges appalling and shocking conduct; but even so, the motions to dismiss raise probing and nettlesome questions as to whether such conduct states a federal claim upon which to invoke the limited jurisdiction of this court. The plaintiff in this lawsuit has asserted claims pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO) and state law alleging that defendants extorted favorable terms from him in settlement of a dissolution of marriage by threatening a criminal prosecution for sexual abuse of a minor child. The defendants have moved to dismiss plaintiff's complaint pursuant to *Fed.R.Civ.P.* 12(b)(6) on the ground that the plaintiff's claims each fail to state a claim upon which relief can be granted. More specifically, the defendants attack the plaintiff's RICO claim, the only one upon which federal jurisdiction is based, as time-barred, pleading no proper RICO enterprise or conduct of that enterprise by the RICO defendants, and failing to allege a pattern of racketeering activity or continuing criminal activity.

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

Plaintiff Bryan Reynolds filed this lawsuit on December 27, 1994, against various defen-

dants alleging injuries as the result of their conduct during an acrimonious divorce. Bryan Reynolds named as defendants Lisa Reynolds, his ex-wife, and Charles Condon, his former father-in-law. In addition, he named as defendants his ex-wife's attorney, Barbara Orzechowski, Ms. Orzechowski's law firm, Klass, Hanks, Stoos, Stoik & Villone (herein "Law Firm"), and some of the partners therein, Marvin J. Klass, James C. Hanks, William K. Stoos, Anthony J. Stoik, and James R. Villone. The original complaint was amended on January 17, 1995, prior to any answer or motion by the defendants. This first amended complaint in this matter was in eleven counts.[1] However, the only count involving a federal claim, and thus the count upon which federal jurisdiction was then asserted, was a claim brought pursuant to 42 U.S.C. § 1983 alleging violation of Bryan Reynolds's civil rights. That count alleged that the defendants, individually and as a group, acting under color of state law, had conspired with the Woodbury County Attorney's Office to subject Bryan Reynolds to the threat of a wrongful prosecution in order to gain advantage in the divorce proceedings involving Bryan and Lisa Reynolds. On January 26, 1995, defendants Orzechowski, the Law Firm, and Messrs. Klass, Hanks, Stoos, Stoik, and Villone (collectively, "the Law Firm Defendants"), moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Defendant Condon joined in that motion to dismiss on February 1, 1995, as did defendant Lisa Reynolds on February 2, 1995. Plaintiff Bryan Reynolds resisted the motion to dismiss on February 24, 1995.

However, on February 24, 1995, Bryan Reynolds also sought leave to file a second amended and substituted complaint. Leave to amend was granted on March 22, 1995. The March 22, 1995, second amended complaint withdrew all reference to a claim of violation of civil rights pursuant to 42 U.S.C. § 1983. Instead, Count I of this complaint asserted violation of provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, as the only federal claim upon which jurisdiction of this court was founded.[2] The gravamen of the RICO claim is that the Law Firm is a RICO "enterprise;" and that defendants Condon Lisa Reynolds, and Orzechowski conducted that enterprise in violation of 18 U.S.C. § 1962(c) or conspired to do so in violation of 18 U.S.C. § 1962(d). Bryan Reynolds alleges that these defendants "maliciously and repeatedly made various threats

1. The state-law claims in this first amended complaint of January 17, 1995, were as follows: Count II alleged extortion as defined by Iowa Code § 711.4 by all defendants, individually and as a group; Count III alleged common-law slander by defendants Condon and Lisa Reynolds; Count IV alleged malicious prosecution by defendants Condon and Lisa Reynolds; Count V alleged abuse of process by all defendants individually and as a group; Count VI alleged intentional infliction of emotional distress by all defendants individually and as a group; Count VII alleged fraud by all defendants individually and as a group; Count VIII alleged loss of consortium and alienation of affection by all defendants; Count IX alleged deception as defined in Iowa Code § 702.9 by all defendants individually and as a group; Count X alleged conspiracy and concerted acts or aiding and abetting such acts to facilitate extortion, fraud, or deception; and Count XI alleged deceit or collusion by all defendants.

2. The other counts in the March 22, 1995, second amended complaint are, as before, based entirely on state law causes of action. However, some of the state law claims in the first amended complaint have been dropped. Thus, the state law claims in the second amended complaint are as follows: Count II alleges extortion as defined by Iowa Code § 711.4 by all defendants, individually and as a group; Count III alleges common-law slander by defendants Condon and Lisa Reynolds; Count IV alleges malicious prosecution by defendants Condon and Lisa Reynolds; Count V alleges abuse of process by all defendants individually and as a group; Count VI alleges intentional infliction of emotional distress by all defendants individually and as a group; Count VII alleges fraud by all defendants individually and as a group; Count VIII alleges conspiracy and concerted acts or aiding and abetting such acts to facilitate extortion, fraud, or deception; and, finally, Count IX alleges deceit and collusion by defendants Orzechowski and the law firm. Thus, the second amended complaint omits two state law claims: a claim for loss of consortium and alienation of affection, and a claim of deception. In addition, the RICO claim has been substituted for the claim pursuant to § 1983 as the basis for federal jurisdiction, and defendant Anthony J. Stoik has been omitted. Thus, references to "the Law Firm Defendants" in the remainder of this ruling do not include Mr. Stoik.

to Plaintiff constituting several acts of extortion in violation of 18 U.S.C. § 1961(1)," March 22, 1995, Amended And Substituted Complaint (Complaint), ¶ 106, and "repeatedly caused letters and other matters and things to be delivered by the United States Postal Service in repeated violation of 18 U.S.C. § 1341," which prohibits mail fraud. Complaint, ¶ 107. All of the conduct specifically pleaded as RICO predicate acts is alleged to have occurred between October 21, 1990, and November 22, 1991.

On April 3, 1995, the Law Firm Defendants moved to dismiss the March 22, 1995, second amended and substituted complaint. They assert that the second amended and substituted complaint still fails to state a federal claim upon which relief can be granted, because the RICO count does not allege "continuing criminal activity," these defendants did not "direct the enterprise," the claim is time-barred by the applicable statute of limitations, and no conduct of these defendants as alleged in the RICO claim was the cause of any injury to Bryan Reynolds. They also moved to dismiss any of the state law claims made against any of the Law Firm Defendants on the ground that they also failed to state a claim and that there was no viable federal question upon which to base jurisdiction in this court over any state-law claims. Lisa Reynolds joined in this motion to dismiss on April 14, 1995. Defendant Condon also joined in the motion to dismiss on May 3, 1995, but at the same time moved to dismiss all other counts against him. Lisa Reynolds then joined in defendant Condon's motion to dismiss, as well as that of the Law Firm Defendants, on May 3, 1995.

Bryan Reynolds resisted the new motion to dismiss by the Law Firm Defendants, in which Lisa Reynolds joined, on April 21, 1995. He resisted the motion to dismiss by defendant Condon on May 19, 1995. Bryan Reynolds argues that he has sufficiently alleged a "pattern" of racketeering activity, that Lisa Reynolds and Condon are proper RICO defendants, that the Law Firm is a proper RICO enterprise, that the defendants have not attacked the adequacy of his RICO conspiracy claim, and that his RICO claim is not time-barred. As to defendant Condon's and defendant Lisa Reynolds's additional grounds for dismissal of the claims against them, Bryan Reynolds argues that this court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear such claims.

The court heard oral arguments on the motions to dismiss on November 1, 1995. Plaintiff Bryan Reynolds was represented at the oral arguments by counsel J. Russell Hixson of Dickinson, Mackaman, Tyler & Hagan, P.C., in Des Moines, Iowa. Mr. Hixson appeared by telephone. All other counsel appeared in person. Defendant Charles Condon was represented by counsel Nicholas V. Critelli, Jr. of the Law Offices Of Nick Critelli, P.C., in Des Moines, Iowa; defendant Lisa Reynolds was represented by counsel Edward J. Keane of Gildemeister, Willia & Keane, in Sioux City, Iowa; and the Law Firm Defendants were represented by counsel Maurice B. Nieland of Rawlings, Nieland, Probasco & Killinger, in Sioux City, Iowa. The oral arguments were both spirited and informative for the court and of great assistance in resolving close, troublesome, and complex issues of federal law.

### B. Factual Background

The factual background for disposition of this motion, of course, is based entirely on the facts as alleged in Bryan Reynolds's March 22, 1995, complaint. According to the complaint, Bryan and Lisa Reynolds were married on April 12, 1988, and at that time entered into an antenuptial agreement for division of their property in the event the marriage ended. Lisa Reynolds had two children, J.R. and Joshua, from a previous marriage, whom Bryan adopted. The couple also had a child together, whom they named William ("Billy") Reynolds.

On June 19, 1990, Lisa Reynolds filed for dissolution of the marriage in Woodbury County Court. Lisa Reynolds was represented in those proceedings by defendant Orzechowski of the defendant Law Firm. It is probably sufficient to pass over a number of Bryan Reynolds's factual allegations concerning the dissolution proceedings and events surrounding it simply by stating that matters became acrimonious.

More to the point, Bryan Reynolds alleges that on October 26, 1990, Lisa Reynolds made a report to the Child Protection Center in Sioux City that Bryan Reynolds had sexually abused their son J.R. after purportedly telling Bryan that "I've got a way I'm going to get you and the house too." Bryan Reynolds alleges that defendants Orzechowski, Condon, and Lisa Reynolds then launched a campaign to use the potential for criminal prosecution or the promise that Lisa would drop the charges to obtain terms for Lisa in the settlement of the divorce that were better than those available to her under the couple's antenuptial agreement. Bryan Reynolds also asserts that, eventually, these defendants extorted termination of Bryan's parental rights in the two children he had adopted. Allegedly as a result of these threats, Bryan Reynolds entered into a series of stipulations to settle the divorce proceedings on terms favorable to Lisa. Specifically, Bryan Reynolds alleges that he entered into a stipulation on January 16, 1991, which staved off his imminent arrest on child sexual abuse charges. A decree of dissolution of marriage was only entered on March 1, 1991, after Bryan had also agreed, on February 21, 1991, to the court's termination of his parental rights to J.R. and Joshua.

Although Bryan Reynolds believed that his agreements with Lisa over the dissolution proceedings had forestalled any such occurrence, on November 22, 1991, the Woodbury County Attorney's Office filed charges against Bryan for sexual abuse of J.R. Reynolds that had allegedly taken place on September 22, 1990. Bryan Reynolds was arrested on November 22, 1991, and was eventually tried on April 14, 1992. A jury convicted Bryan Reynolds, and, on May 18, 1992, Bryan was sentenced to twenty-five years in prison. On January 25, 1994, the Iowa Court of Appeals reversed Bryan Reynolds's conviction and remanded for a new trial after Bryan Reynolds had already served more than two years of his prison term. The appellate court ruled that the trial court improperly excluded evidence of alleged extortion and coercion by Charles Condon and Lisa Reynolds. On August 16, 1994, the retrial was dismissed by the Woodbury County Attorney's Office on the ground that the complaining witness, Lisa Reynolds, had refused to testify.

Turning specifically to the predicate acts alleged in support of the RICO claim, the complaint makes the following factual allegations. In October of 1990, Lisa Reynolds threatened to get more than the antenuptial agreement would have given her, and subsequently made the allegations of sexual abuse of J.R. to that end. Defendant Orzechowski became involved in this scheme in late November or early December of 1990 when she told Bryan Reynolds's divorce attorney in a telephone conversation that Lisa would drop the abuse charges if Bryan agreed to terminate his parental rights to J.R. and Joshua. Defendant Condon then told Bryan Reynolds, again in a telephone conversation, that Lisa would drop the abuse charges if Bryan gave Lisa the marital home on favorable terms. At a meeting at the Law Firm on December 22, 1990, attended by Bryan Reynolds, his attorney Steve Jensen, and defendants Condon, Reynolds, and Orzechowski, defendant Condon allegedly indicated to Bryan Reynolds that they would pursue the abuse charges unless Bryan was "willing to give us something in the divorce." The complaint alleges that in early January of 1991, defendant Orzechowski, "as attorney for Defendant Reynolds and as a partner in Defendant Law Firm, used the resources of her Law Firm to communicate with other Defendants and to draft a new stipulation and provided the same to Defendant Condon for delivery to Plaintiff" on January 12, 1991.

Defendant Condon is alleged to have told Bryan Reynolds in a telephone conversation on January 15, 1991, that defendant Orzechowski was drafting yet another stipulation, which would give Lisa Reynolds a still more favorable settlement of the divorce. Condon allegedly told Bryan Reynolds that he would not be arrested for child sexual abuse the next day if he agreed to the stipulation, but that otherwise he would be. Condon also allegedly told Bryan Reynolds at that time to pay the Law Firm $2,500. On January 16, 1991, Bryan Reynolds picked up the new stipulation from the Law Firm, where "Defendant Orzechowski personally handed Plaintiff the new stipulation which had been

drafted by her in her capacity as Defendant Reynold's lawyer using the resources of the Law Firm and she told Plaintiff that he was to call Defendant Condon before he left the offices." In that call, Condon purportedly told Bryan Reynolds that he (Condon) would now send Lisa to tell the county attorney not to press the charges against Bryan Reynolds.

Allegedly "still in fear" of a wrongful prosecution, Bryan Reynolds agreed, sometime in February of 1991, to terminate his parental rights in J.R. and Joshua and to give Lisa the marital home in exchange for $20,000. The complaint alleges that "[o]n February 21, 1991, the court, based on the petition submitted by Defendant Reynolds and drafted by her lawyer Orzechowski with the resources of the Law Firm, terminated Plaintiff's parental rights to J.R. and Joshua." Furthermore, "[o]n March 1, 1991, the court, based on the petition submitted by Defendant Reynolds and [ ] drafted by [her] lawyer Orzechowski with the resources of the Law Firm, entered a Decree of Dissolution of Marriage" pursuant to the December 22, 1990, stipulation signed by the parties, but not, it appears from the pleadings, pursuant to any of the later stipulations Bryan Reynolds alleges were extorted from him. On November 22, 1991, the sexual abuse charges were filed and Bryan was arrested, allegedly at Lisa's renewed instigation, because Lisa was unhappy that she had not had her way about visitation with the couple's son Billy on Halloween.

The allegations of mail fraud, which the complaint asserts are also predicate acts under the RICO statute, are, in their entirety, as follows:

> Upon information and belief, for the purposes of executing and attempting to execute a scheme to defraud Plaintiff out of his property, the defendants repeatedly caused letters and other matters and things to be delivered by the United States Postal Service in repeated violation of 18 U.S.C. § 1341 (mail fraud). These mailings include but are not limited to documents mailed between the defendants and from the defendants to the court for filing and to Plaintiff which furthered the defendants' fraudulent scheme.

Complaint, ¶ 107. Although the complaint identifies a number of telephone calls as the means of committing predicate acts, nowhere does the complaint specifically allege "wire fraud" in violation of 18 U.S.C. § 1343. Nor does it specifically allege that any of these predicate acts were instances of "witness tampering," in the form of manipulating Lisa Reynolds's communications with the county attorney concerning the abuse charges. However, at oral arguments, Bryan Reynolds's counsel asserted that the complaint adequately pleads numerous instances of both witness tampering and wire fraud in support of the RICO claim.

Having surveyed the factual allegations upon which the March 22, 1995, second amended complaint in this matter is based, the court turns next to the question of the standards applicable to determining whether that complaint states claims upon which relief can be granted.

## II. APPLICABLE STANDARDS

A motion to dismiss may be made, *inter alia*, for "failure to state a claim upon which relief can be granted." *Fed.R.Civ.P.* 12(b)(6). A motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6) requires the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted. *Fed.R.Civ.P.* 12(b).[3] Such motions "can serve a useful

---

3. However, where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Fed.R.Civ.P.* 12(b)(6). Although plaintiff Bryan Reynolds has offered a letter, dated September 29, 1994, from Orzechowski to Bryan Reynolds's divorce attorney, as an exhibit in support of his resistance to the motions to dismiss, no other materials have been offered in support

of or resistance to the motions to dismiss in this case. The court concludes that the letter of September 29, 1994, which makes a demand that Bryan Reynolds sign a satisfaction of judgment in the dissolution proceedings, proffered, apparently, to support Bryan Reynolds's argument that criminal activity continued at least until late 1994, must be disregarded. *Fed.R.Civ.P.* 12(c). The court notes that Chief Magistrate Judge Jarvey has stayed discovery in this matter until the dispositive motions are resolved. Therefore, it

purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir.1968), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agricultural Chemical Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989).

In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987), and 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan*, 829 F.2d at 12). Plaintiff's allegations here as to mail fraud consist of little more than conclusory statements of wrong-doing. Such conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Westcott*, 901 F.2d at 1488.

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–02. Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). Thus, it is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a dismissal under Rule 12(b)(6) is warranted. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982).

With these standards in mind, the court will consider the various defendants' motions to dismiss for failure to state a claim upon which relief can be granted.

### III. LEGAL ANALYSIS

#### A. Defendants' January 26, 1995, Motion To Dismiss

■ The Law Firm Defendants moved to dismiss the first amended complaint, filed January 17, 1995, on January 26, 1995, largely on the ground that Bryan Reynolds's civil rights claim brought pursuant to 42 U.S.C. § 1983 was inadequate, and since this sole federal claim was inadequate, the court should decline to exercise supplemental jurisdiction over the remaining state-law claims. Although Bryan Reynolds resisted that motion to dismiss on February 24, 1995, that same day he also offered his second amended complaint, which was eventually filed on March 22, 1995, and which entirely withdrew the assertedly deficient § 1983 claim as well as two other challenged state-law claims. The court concludes that consideration of the objections to the remaining state-law claims of the first amended complaint raised in the January 26, 1995, motion to dismiss, even where those claims are similar to those in the second amended complaint, would be a pointless exercise.

Therefore, the Law Firm Defendants' January 26, 1995, motion to dismiss, joined in by defendant Condon on February 1, 1995, and

would be improper for the court to convert consideration of these Rule 12(b)(6) motions to dismiss into consideration of motions for summary judgment pursuant to Rule 56, *Fed.R.Civ.P.* 12(c), based solely on Bryan Reynolds's inclusion of one letter as an exhibit. The court will not convert the present motions into motions for summary judgment on so slim a basis. Therefore, the motion to dismiss will not be disposed of as provided in Rule 56, but only according to the standards stated herein.

**1504**

defendant Lisa Reynolds on February 2, 1995, is denied as moot.

### B. The Defendants' Other Motions To Dismiss

The court will consider next the Law Firm Defendants' April 3, 1995, motion, joined in by both Lisa Reynolds and defendant Condon, challenging the adequacy of the pleading of the RICO claim in the March 22, 1995, second amended complaint. The defendants' first allegation of an "insuperable bar" to this claim, apparent on the face of the complaint, *Fusco,* 676 F.2d at 334, is that it is time-barred. The defendants then take issue with the adequacy of the pleading of the RICO claim on a number of grounds. The court will consider each of these grounds for dismissal seriatim.

### 1. Is the RICO claim time-barred?

In *Granite Falls Bank v. Henrikson,* 924 F.2d 150 (8th Cir.1991), the Eighth Circuit Court of Appeals discussed the statute of limitations applicable to a civil RICO claim. The court noted that in *Agency Holding Corp. v. Malley–Duff & Assocs.,* 483 U.S. 143, 156–57, 107 S.Ct. 2759, 2766–67, 97 L.Ed.2d 121 (1987), the Supreme Court had held that the applicable statute of limitations for such a claim was the four-year statute of limitations found in the Clayton Act, but that the Court expressly left open the question of the time at· which a RICO action accrues. *Granite Falls Bank,* 924 F.2d at 151. The Eighth Circuit Court of Appeals therefore held that "the nature of the conduct proscribed by RICO compels the application of discovery principles in fashioning an accrual rule" for civil RICO actions. *Id.* at 153. Recognizing that "the heart of any RICO complaint is the allegation of a *pattern* of racketeering," citing *Malley–Duff,* 483 U.S. at 154, 107 S.Ct. at 2766, the court agreed that "an appropriate accrual rule must include an emphasis on the pattern element," but should also look to the injury requirement of a RICO cause of action. *Id.* at 154. The court specifically adopted the rule formulated by the Eleventh Circuit Court of

Appeals, which is that "with respect to each independent injury to the plaintiff, a civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern." *Id.* (quoting *Bivens Gardens Office Bldg., Inc. v. Barnett Bank of Florida, Inc.,* 906 F.2d 1546, 1554–55 (11th Cir.1990). Thus, the court concluded that the allegations of the complaint, taken as true in an action that had been dismissed pursuant to *Fed.R.Civ.P.* 12(b)(6), demonstrated that "this action was filed within four years from the time of the Bank's post-injury discovery of the alleged pattern of racketeering activity," and the trial court's dismissal of the complaint as time-barred was improper. *Id.* at 155.

In this case, the Law Firm Defendants asserted in their brief that the last predicate act alleged against defendant Orzechowski occurred on or before February 21, 1991, which is more than four years prior to the offering or filing of the second amended complaint in which the RICO claim is first asserted.[4] Bryan Reynolds argues that he was not injured until some time after December 27, 1990, four years before the filing of his original complaint, and that he could not reasonably have discovered that his injury was part of a pattern before that date. Although Bryan Reynolds asserted in his brief, albeit almost in passing, that his RICO claim should "relate back" to the filing of his first amended complaint, the defendants made no argument in their briefs as to why that should not be so.

At oral arguments, the Law Firm Defendants argued that, even assuming relation back to be proper, that the stipulation actually accepted by the court was worked out at the meeting on December 22, 1990, and that this only actually injurious act, if chargeable against these defendants in support of a RICO claim, is more than four years before even the original complaint was filed. These defendants also asserted that the March 22, 1995, complaint was an entirely new complaint, not merely a continuation and refine-

---

**4.** Predicate acts by Lisa Reynolds and defendant Condon are alleged to have taken place over a significantly longer period of time, from October 21, 1990, to November 22, 1991.

ment of the former complaint, such that it should not relate back at all.

At oral arguments, Bryan Reynolds's counsel also asserted that Bryan has suffered continuing injuries after February of 1991, some of which have continued to the present and may extend indefinitely into the future. These injuries, Bryan argues, are lost income as the result of his prison record and wrongful prosecution, and continuing emotional distress from his wrongful prosecution and incarceration, the loss of his parental rights in J.R. and Joshua, and the loss of his home. The court agrees, however, with counsel for Lisa Reynolds that under this theory of continuing injuries as forever extending the accrual of Bryan Reynolds's RICO claim, the statute of limitations would never begin to run. It is also apparent that as to the injuries *actually pleaded* in the second amended complaint, the "accrual date" under *Granite Falls Bank*, 924 F.2d at 154, was most likely on or about February 21, 1991, although the "accrual date" could reasonably be found to be as late as the last predicate act alleged, which was in November of 1991. Because either of these dates would fall within the four-year statute of limitations if the filing of the original complaint is the key date, and the November 1991 date would fall within the statue of limitations if the key date is March 22, 1995, when the second amended complaint was filed, the court need not pass on assertions of an accrual date any later than November of 1991.

The court does not agree with the Law Firm Defendants that the last date of injury, and hence last reasonable date of accrual of Bryan Reynolds's RICO claim, that can reasonably be inferred from the pleadings, *Westcott*, 901 F.2d at 1488, was December 22, 1990. Defendants have not demonstrated in what way December 22, 1990, was the soonest that the plaintiff could or should reasonably have discovered both the existence and source of his injury and that the injury was part of a pattern. *Granite Falls Bank*, 924 F.2d at 154. For example, from the facts alleged, it could reasonably be inferred that there was no actual injury until the court confirmed the December 22, 1990, stipulation

in the decree of dissolution of marriage on March 1, 1991.

Federal Rule of Civil Procedure 15(c), as amended in 1991, provides for relation back of amendments to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted [when certain other conditions are met].

*Fed.R.Civ.P.* 15(c). The Eighth Circuit Court of Appeals does not appear to have passed on the interpretation of the amended version of the rule. However, in construing the provision for relation back in former Rule 15(c) now found, in identical language, in Rule 15(c)(2), the Eighth Circuit Court of Appeals cited the controlling case on the Rule 15(c) issue, *Schiavone v. Fortune*, 477 U.S. 21, 30–31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986), as holding that the " 'linchpin [of Rule 15(c) ] is notice, and notice within the limitations period.' " *Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008, 1011–12 (8th Cir.1991). The court concluded that the amended complaint including a new claim could not relate back to the original complaint where the defendant had no proper notice of the claim. *Id.* at 1012–13.

More recently, cases interpreting the amended version of Rule 15(c) have applied similar standards to the question of whether an amendment should relate back to the filing of the original complaint, thus thwarting a defendant's statute of limitations argument. *See, e.g., Barrow v. Wethersfield Police Dep't.*, 66 F.3d 466, 469 (2d Cir.1995) (amendments under new version of Rule 15(c), as with former version, relate back only when defendant has proper notice of claim); *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 102 (5th Cir.1995) (amendment relates back if it corrects deficiencies in the

original pleading or expands factual allegations already made, because there is no lack of notice of the claim); *Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir.1995) (amendment does not relate back where it brings in new parties who did not timely assert claims, and defendant therefore had no timely notice of those plaintiffs' claims).

In *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168 (1st Cir.1995), the First Circuit Court of Appeals confronted a question nearer to the one before this court, which was whether an amendment stating a new *claim*, not merely making new or refined allegations or identifying defendants previously sued only as "John Does," should relate back to the filing of the original complaint. The First Circuit Court of Appeals concluded that "[i]f the new claim arises out of the same nucleus of operative fact [as was pleaded in the original complaint], it will ordinarily relate back to the date of the institution of the suit." *Rodriguez*, 57 F.3d at 1175 n. 7. Thus, in that case, the fact that the statute of limitations for the new claim may have run by the time the amended complaint in which it first appeared was filed did not present an insurmountable obstacle to assertion of that new claim. *Id.*

▮▮▮ In the present case, the court concludes that Bryan Reynolds's assertion of the RICO claim should relate back to the date of the filing of his original complaint. The RICO claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Fed.R.Civ.P.* 15(c)(2). Simple comparison of the original complaint with the second amended complaint filed March 22, 1995, demonstrates that the factual allegations upon which both complaints are based are nearly identical. Where, as here, the new RICO claim "arises out of the same nucleus of operative fact [as was pleaded in the original complaint], it will ordinarily relate back to the date of the institution of the suit." *Rodriguez*, 57 F.3d at 1175 n. 7. Because Bryan Reynolds's RICO claim does relate back to the filing of

his original complaint, the predicate acts on or about February 21, 1991, which defendants assert were the last to start the running of the statute of limitations, were within four years of the filing of the original lawsuit on December 27, 1994. Therefore, Bryan Reynolds has alleged and may be able to prove a set of facts demonstrating that his claim falls within the applicable four-year statute of limitations. *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102. The statute of limitations presents no "insuperable bar" to assertion of the RICO claim in this lawsuit, *Fusco*, 676 F.2d at 334, and defendants are not entitled to dismissal of the RICO claim on this ground.

### 2. Sufficiency of RICO allegations

In order to determine the adequacy of the RICO claim asserted in this lawsuit, the court deems it appropriate first to examine the purpose and scope of RICO. The court will then consider the requirements for adequately pleading a RICO violation.

#### a. Purpose and scope of RICO

This court recently considered the scope and purpose of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, in *De Wit v. Firstar Corp.*, 879 F.Supp. 947, 960–62 (N.D.Iowa 1995). In *De Wit*, the court noted that RICO claims have as one necessary element proof of either "a pattern of racketeering activity," involving crimes defined in 18 U.S.C. § 1961(1), or "collection of an unlawful debt." *De Wit*, 879 F.Supp. at 960 (citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 232, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481, 105 S.Ct. 3275, 3277, 87 L.Ed.2d 346 (1985)). Thus, crimes not specified in § 1961 cannot support a RICO claim. *Manion v. Freund*, 967 F.2d 1183, 1186 (8th Cir.1992) (breach of fiduciary duty is not one of the specified state crimes listed in the definition of "racketeering activity," 18 U.S.C. § 1961(1), and thus could not support a civil RICO claim).[5] However, because they are

---

5. Racketeering activities defined in § 1961(1) include murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene mat-

ter, or dealing in narcotic or other dangerous drugs, specified federal offenses indictable under title 18, including such offenses as bribery, coun-

crimes listed in § 1961, the crimes of extortion and mail fraud, conduct specifically alleged in the RICO claim here, can be RICO "predicate acts," as can the wire fraud and witness tampering the plaintiff here asserted in oral arguments had also been alleged, if not so identified.

The Supreme Court identified the purpose of RICO as follows:

> The occasion for Congress' action was the perceived need to combat organized crime. But Congress for cogent reasons chose to enact a more general statute, one which, although it had organized crime as its focus, was not limited in application to organized crime. In Title IX, Congress picked out as key to RICO's application broad concepts that might fairly indicate an organized crime connection, but that it fully realized do not either individually or together provide anything approaching a perfect fit with "organized crime." See, e.g., [116 Cong.Rec.] at 18940 (Sen. McClellan) ("it is impossible to draw an effective statute which reaches most of the commercial activities of organized crime, yet does not include offenses commonly committed by persons outside organized crime as well").

*H.J. Inc.*, 492 U.S. at 248, 109 S.Ct. at 2905; *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 990 (8th Cir.1989) (citing *United States v. Turkette*, 452 U.S. 576, 591, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981)). Thus, RICO also imposes civil liability on other types of organizations that have no alleged ties to organized crime. *Atlas Pile Driving Co.*, 886 F.2d at 990.

The parties here contest whether RICO was intended to include within its reach a law firm conducting normal legal business. As this court observed in *De Wit*, the reach of RICO beyond the activities of organized crime has caused courts some distress as well. *De Wit*, 879 F.Supp. at 961. However, the Supreme Court regarded the extensive reach of RICO as an indication of the breadth Congress intended the statute to have, not as a defect in its drafting. *Id.* The court will consider below whether this law firm nonetheless escapes RICO's extensive reach.

RICO contains a civil enforcement scheme permitting private individuals harmed by criminal RICO activity to recover damages in a civil action. *Bowman v. Western Auto Supply Co.*, 985 F.2d 383, 384 (8th Cir.), *cert. denied*, ─── U.S. ───, 113 S.Ct. 2459, 124 L.Ed.2d 674 (1993). The relevant provision of the Act is as follows:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c); *Bowman*, 985 F.2d at 384; *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 768 (8th Cir.1992) ("RICO provides a civil cause of action to those who are injured by activities violative of 18 U.S.C. § 1962 (1988)."). Under § 1964, then, any individual who has experienced injury to his or her business or property "by reason of" a RICO violation has standing to bring a private civil action. *Bowman*, 985 F.2d at 384. The litigant's injury, however, must result from a violation of 18 U.S.C. § 1962. *Sedima*, 473 U.S. at 496–97, 105 S.Ct. at 3285; *Bowman*, 985 F.2d at 385. The court turns next to the elements of a viable RICO claim.

#### b. Elements Of Plaintiff's § 1962(c) RICO Claim

■ The plaintiff here alleges that defendants have violated 18 U.S.C. § 1962(c), which is the provision of RICO that makes it "unlawful for any person ... associated with an enterprise engaged in, or the activities of

---

terfeiting, embezzlement, wire and mail fraud, witness tampering, interstate gambling offenses, other interstate offenses, and dealings in contraband, specified federal offenses indictable under title 29, including violations of restrictions on payments and loans to labor organizations and embezzlement from union funds, and further offenses including "any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or ... any act which is indictable under the Currency and Foreign Transactions Reporting Act...."

which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c); *Bowman*, 985 F.2d at 384 n. 1; *Diamonds Plus, Inc.*, 960 F.2d at 768; *Atlas Pile Driving Co.*, 886 F.2d at 990. Thus, to establish a RICO violation under 18 U.S.C. § 1962(c) a plaintiff must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that must include at least two racketeering acts." *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285; *United States v. Nabors*, 45 F.3d 238, 239 (8th Cir.1995) (quoting *Sedima* for the elements of the violation in a criminal RICO prosecution); *Nolte v. Pearson*, 994 F.2d 1311, 1316–17 (8th Cir.1993); *Bowman*, 985 F.2d at 385 (quoting *Sedima*); *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*, 934 F.2d 976, 979 n. 4 (8th Cir. 1991); *Granite Falls Bank*, 924 F.2d at 153; *Atlas Pile Driving Co.*, 886 F.2d at 990; *and compare United States v. Bennett*, 44 F.3d 1364, 1373 (8th Cir.1995) (another criminal RICO prosecution in which the court stated that "[t]o prove a substantive RICO violation, the government must establish: 1) the existence of an enterprise affecting interstate or foreign commerce; 2) the defendant's association with the enterprise; 3) that the defendant participated in the conduct of the enterprise's affairs; and 4) that the defendant's participation was through a pattern of racketeering activity," citing *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir.1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984), and *United States v. Phillips*, 664 F.2d 971, 1011 (5th Cir.1981), *cert. denied sub nom. Meinster v. United States*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982)). The court in *Sedima* concluded that

> the statute requires no more than this. Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pat-

tern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.... Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.

*Sedima*, 473 U.S. at 496–97, 105 S.Ct. at 3285–86 (footnotes omitted); *Bowman*, 985 F.2d at 385 (quoting *Sedima*). The Eighth Circuit Court of Appeals describes this as a "proximate cause" requirement that the injury asserted be proximately caused by the predicate acts alleged. *Bowman*, 985 F.2d at 387 (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992), and *Schiffels v. Kemper Fin. Serv.*, 978 F.2d 344, 351 (7th Cir.1992)). The court therefore turns to examination of Bryan Reynolds's allegations of each of these elements of a § 1962(c) violation by the RICO defendants in this case.

*i.  RICO enterprise.*  There appears to be some confusion among the parties as to what is alleged to be the RICO enterprise in this litigation. Defendant Condon, in particular, asserts that Bryan Reynolds has inadequately alleged an association-in-fact enterprise of the Law Firm and two of its clients, Condon and Lisa Reynolds, and that courts have uniformly rejected RICO enterprises alleged in this way. Defendant Condon asserts that viable RICO enterprises are more often "law firms gone bad," in which the law firm itself is the primary vehicle for an insurance fraud or other scheme. However, Bryan Reynolds counters that he has alleged no such association-in-fact, but has repeatedly alleged and argued that the Law Firm itself is the "RICO enterprise." A review of the complaint indicates that Bryan Reynolds's characterization of his complaint is correct. Complaint, § 104 ("The Law Firm is an 'enterprise' engaged in activities which affect interstate commerce within the meaning of 18 U.S.C. § 1961(4).").[6]

---

6. There also appears to be some confusion among the parties about whether each RICO defendant's conduct must have an effect on interstate commerce. The plain language of the RICO statute settles this point: it is not the individual RICO defendants, but the RICO enterprise, that must have an effect on interstate commerce. 18 U.S.C. § 1962(c) ("[it shall be] unlawful for any person ... associated with *an enterprise engaged in, or the activities of which affect, interstate or foreign commerce,* to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity"; emphasis added).

■ The question actually relevant to the motions to dismiss here, therefore, is whether the Law Firm itself, not the Law Firm plus any other defendants, can be a proper RICO enterprise. The decisions of the Eighth Circuit Court of Appeals consistently define a RICO enterprise as exhibiting three basic characteristics: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering. *Nabors,* 45 F.3d at 240 (quoting *Atlas Pile Driving Co.,* 886 F.2d at 995); *Diamonds Plus, Inc.,* 960 F.2d at 770–71 (also quoting *Atlas Pile Driving Co.*); *Atlas Pile Driving Co.,* 886 F.2d at 995. The first characteristic, common or shared purpose, has apparently troubled the courts little, while the second, continuity of structure and personnel, has been of less certain meaning. *De Wit,* 879 F.Supp. at 966. The Eighth Circuit Court of Appeals has held that "continuity" does not require that members remain consistent. *Nabors,* 45 F.3d at 240. "Indeed, this circuit's definition of an enterprise specifically includes the phrase '*some* continuity ... of personnel' (emphasis supplied), *Atlas Pile Driving Co.,* 886 F.2d at 995, not 'complete continuity.'" *Id.* The third characteristic, distinct structure, has required the most clarification. *De Wit,* 879 F.Supp. at 967. The Eighth Circuit Court of Appeals has defined the meaning of this characteristic as follows:

> Th[e] distinct structure might be demonstrated by proof that a group engaged in a diverse pattern of crimes or that it has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes. The command system of a Mafia family is an example of this type of structure as is the hierarchy, planning, and division of profits within a prostitution ring.

*Diamonds Plus, Inc.,* 960 F.2d at 770 (quoting *United States v. Bledsoe,* 674 F.2d 647 (8th Cir.), *cert. denied sub nom. Phillips v. United States,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982)). Thus, the "focus of the inquiry" on this characteristic is "whether the enterprise encompasses more than what is necessary to commit the predicate RICO offense." *Id.*

Because a law firm obviously has the three characteristics listed in *Nabors,* it appears that Bryan Reynolds has alleged a proper "RICO enterprise." A law firm must have, at a minimum, the common or shared purpose of practicing law, it involves at least some continuity of personnel, and it has a distinct structure apart from or greater than anything necessary to commit RICO predicate acts. *Nabors,* 45 F.3d at 240. Indeed, although defendant Condon may be correct in his assertion that courts are reluctant to recognize a "RICO enterprise" defined as a law firm plus a client or clients, decisions of other district courts are in almost complete agreement with the proposition that a law firm itself may be a RICO enterprise. *See Riggs Nat'l Bank of Washington, D.C. v. Freeman,* 684 F.Supp. 1086, 1088 (S.D.Fla. 1988) (law firm met only requirements for enterprise under *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981), that it have ongoing organization, formal or informal, and that various associates function as a continuing unit; the continuity of existence of the law firm, however, did not establish the "pattern of racketeering activity" requirement); *Bingham v. Zolt,* 683 F.Supp. 965, 970–71 (S.D.N.Y.1988) (law firm could be "enterprise" for RICO purposes, but for it also to be a "RICO defendant," it had to form an enterprise with other firms or people); *State Farm Mut. Auto. Ins. Co. v. Rosenfield,* 683 F.Supp. 106, 109 (E.D.Pa.1988) (law firm was RICO enterprise, because it was a professional corporation organized for the practice of law, and further had the requisite nexus with interstate commerce); *Jones v. Baskin, Flaherty, Elliot & Mannino, P.C.,* 670 F.Supp. 597, 598 (W.D.Pa.1987) (law firm identified as RICO enterprise challenged RICO claim on basis of plaintiff's standing, not failure to meet "enterprise" requirement); *McMurtry v. Brasfield,* 654 F.Supp. 1222, 1224 (E.D.Va.1987) (law firm can be "RICO enterprise," but it cannot also be a "RICO defendant"); *Park South Assocs. v. Fischbein,* 626 F.Supp. 1108, 1112 (S.D.N.Y. 1986) (law firm could be RICO enterprise because it was legal entity meeting organiza-

tional requirements).[7]

Yet, in *Broyles v. Wilson*, 812 F.Supp. 651 (M.D.La.1993), the district court concluded that a law firm could not be a RICO enterprise, because the plaintiff had not "allege[d] that [the law firm] existed for the purpose of effectuating [the RICO defendant's] scheme to defraud [the plaintiff]," but instead had the common purpose of conducting the regular business of a law firm, *i.e.*, the practice of law. *Broyles*, 812 F.Supp. at 657. Thus, the question is, does the common or shared purpose of the supposed enterprise have to be to perpetrate the RICO predicate acts or to injure the plaintiff before the enterprise is a "RICO enterprise"? Although the district court in *Broyles* apparently concluded that it did, the court did not develop an argument in support of that conclusion.

Although an association-in-fact enterprise may well be associated only for the common purpose of committing the illegal predicate acts or for the purposes of pursuing a larger illegal scheme, that is not so of a legal entity identified as a "RICO enterprise." Indeed, the Eighth Circuit Court of Appeals has noted that "[a]n enterprise is particularly likely to be found where ... the enterprise alleged is a legal entity rather than an 'associational enterprise.' Legal entities are garden-variety 'enterprises' which generally pose no problem of separateness from the predicate acts." *Bennett v. Berg*, 685 F.2d 1053, 1060 n. 9 (8th Cir.1982) (citing cases). Furthermore, in *Turkette*, the Supreme Court distinguished between the "enterprise" requirement on the ground that it was met by organizational characteristics, while a "pattern of racketeering activity" required a series of *criminal* acts. *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2529.

■ The court concludes here that there is no requirement that the common or shared purpose of the "RICO enterprise" in fact be the criminal or injurious scheme of which the plaintiff complains, or even that the common or shared purpose be illegal activity aimed at this or other victims; the enterprise need only have a common or shared purpose,

which may be legal or otherwise, and may be related to the predicate acts or not, as the case may be, as well as the other organizational characteristics of an enterprise, continuity of structure and structure distinct from that inherent in a pattern of racketeering activity, *Nabors*, 45 F.3d at 240, in order to meet the "enterprise" element of a RICO claim. The RICO enterprise, at least when identified as a legal entity, need not, however, have as its shared or common purpose the illegal scheme perpetrated against the victim, although, in some circumstances, that may be the case. The requirements the court finds necessary are met by the Law Firm here. Bryan Reynolds's RICO claim cannot be dismissed for failure to plead a proper RICO enterprise.

■ *ii. Conduct of the enterprise.* However, even though the Law Firm is a proper RICO enterprise, the court finds an insuperable bar to the RICO claim in this case in the inadequacy of any pleading of conduct of the enterprise by the RICO defendants. Where the record is "devoid of evidence that defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise," the court need not reach any other element of the § 1962(c) RICO claim before dismissing it. *Nolte*, 994 F.2d at 1317. The "conduct" element is the distinguishing element of a § 1962(c) claim, because

> [i]n their comments on the floor, members of Congress consistently referred to subsection (c) as prohibiting the *operation* of an enterprise through a pattern of racketeering activity and to subsections (a) and (b) as prohibiting the *acquisition* of an enterprise. Representative Cellar, who was Chairman of the House Judiciary Committee that voted RICO out in 1970, described § 1962(c) as proscribing the "conduct of the affairs of a business by a person acting in a *managerial* capacity, through racketeering activity." 116 Cong. Rec. 35196 (1970) (emphasis added).

---

7. Bryan Reynolds has not pleaded that the Law Firm is a RICO defendant, only that it is the RICO enterprise. The RICO defendants are pleaded as Condon, Lisa Reynolds, and Orzechowski.

*Reves v. Ernst & Young,* 507 U.S. 170, 182, 113 S.Ct. 1163, 1171–72, 122 L.Ed.2d 525 (1993) (emphasis in the original). The Court recognized that these remarks did not mean that § 1962(c) was limited to the operation or management of an enterprise, but that liability under § 1962(c) required that "one has participated in the operation or management of the enterprise itself." *Id.* at 183, 113 S.Ct. at 1172 (approving the test applied by the Eighth Circuit Court of Appeals below in *Arthur Young v. Reves,* 937 F.2d 1310 (8th Cir.1991); *Nolte,* 994 F.2d at 1317 (also embracing this test).

Whether the plaintiff has adequately pleaded this element of a RICO violation is the issue this court finds dispositive in this case. Defendants argue that Condon and Lisa Reynolds had no capacity to control the managerial decisions of the Law Firm, and did not attempt to do so. Bryan Reynolds seizes on the defendants' apparent lack of argument as to defendant Orzechowski's ability to manage the law firm as a concession that a partner in the Law Firm necessarily managed it, and Condon and Reynolds "indirectly" conducted the business of the Law Firm through Orzechowski.

In *Reeves,* having established the test for "conduct" as considering defendant's participation in the operation or management of the enterprise, the Supreme Court then considered whether this test improperly limited the reach of § 1962(c) to extend liability to "outsiders" to the enterprise. *Id.* at 185, 113 S.Ct. at 1173; *see also De Wit,* 879 F.Supp. at 964. The Court found four grounds for rejecting this concern:

> First, it ignores the fact that § 1962 has four subsections. Infiltration of legitimate organizations by "outsiders" is clearly addressed in subsections (a) and (b), and the "operation or management" test that applies under subsection (c) in no way limits the application of subsections (a) and (b) to "outsiders." Second, § 1962(c) is limited to persons "employed by or associated with" an enterprise, suggesting a more limited reach than subsections (a) and (b), which do not contain such a restriction. Third, § 1962(c) cannot be interpreted to reach complete "outsiders" because liabili-

ty depends on showing that the defendants conducted or participated in the conduct of the *"enterprise's* affairs," not just their *own* affairs. Of course, "outsiders" may be liable under § 1962(c) if they are "associated with" an enterprise and participate in the conduct of its affairs—that is, participate in the operation or management of the enterprise itself. . . .

> In sum, we hold that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," § 1962(c), one must participate in the operation or management of the enterprise itself.

*Reves,* 507 U.S. at 185, 113 S.Ct. at 1173 (emphasis in the original).

■ The court concludes that Lisa Reynolds and Condon are "outsiders" who do not properly fall within the proscription of § 1962(c). In the words of the Supreme Court, they conducted "just their *own* affairs," not the *"enterprise's* affairs." *Id.* The court cannot conceive of a construction of the "conduct" requirement that would turn a client's demands upon a lawyer into "conduct" of the law firm, any more than the Supreme Court could conceive that a firm's provision of services to a "RICO enterprise" was "conduct" of the enterprise. *Id.* 507 U.S. at 177, 113 S.Ct. at 1169.

■ As to defendant Orzechowski, the court does not believe that the mere fact that she was a partner in the Law Firm necessarily means that she "conducted" the enterprise for the purposes of a RICO claim. In other words, her status as a partner does not mean that she "conduct[ed] the affairs of [the Law Firm] by . . . acting in a *managerial* capacity, *through racketeering activity."* *Id.* at 507 U.S. at 182, 113 S.Ct. at 1171–72 (quoting 116 Cong.Rec. 35196 (1970); first emphasis added by the Supreme Court and second emphasis added by this court here). There are no allegations whatsoever in the complaint that Orzechowski acted in a *managerial* capacity in the Law Firm. *Id.* What is alleged is that Orzechowski conducted the affairs of Condon and Lisa Reynolds. That, after all, is what an attorney does for a client. Even assuming, *arguendo,* that a partner in a law firm necessarily acts in such a manage-

rial capacity, a proposition that may not always be factually supportable, and further assuming that no allegation of such management is necessary, there are no allegations that Orzechowski conducted or managed the affairs *of the Law Firm* through *racketeering activity, id.* 507 U.S. at 182, 113 S.Ct. at 1172 (liability under § 1962(c) extends to "one [who] has participated in the operation or management of the enterprise itself" through a pattern of racketeering activity), although there are certainly allegations that she conducted the affairs of Condon and Lisa Reynolds through activities falling within the definition of racketeering activity in § 1961. What is alleged is merely that Orzechowski used the facilities of the law firm to draft documents that were useful or necessary to the extortionate scheme Bryan Reynolds alleges. The court concludes that, as a matter of law, such allegations are insufficient to meet the "conduct" element of a RICO claim. Simply by alleging that an attorney acted on behalf of a client, whether the means used were fair or foul, and that in doing so, the attorney used the facilities of the firm, does not allege that the attorney has conducted *the affairs of the law firm* in which she is a partner, or that the clients indirectly conducted *the affairs of the law firm* through the attorney, *through racketeering activity. Id.*[8] The pleading of the RICO claim is therefore deficient as a matter of law and must be dismissed. *Nolte*, 994 F.2d at 1317 (where the record is "devoid of evidence that defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise," the court need not reach any other element of the § 1962(c) RICO claim before dismissing it).

**iii. Pattern of racketeering activity.** Notwithstanding the court's conclusion that the pleading of the RICO claim is deficient as a matter of law as to the "conduct" element, the court will reach the remaining elements of a RICO claim and other issues raised by the parties, which include the need to plead adequately a pattern of racketeering activity.

Liability under RICO is premised upon conduct involving a "pattern" of racketeering activity. 18 U.S.C. § 1962; *Manion*, 967 F.2d at 1185. Indeed, at oral arguments, the parties lavished the greatest attention on the adequacy of the pleading of this element. Perhaps justifiably so, at least in other contexts in which "conduct" has been adequately alleged, because allegation of a "pattern of racketeering" has been described as "the heart of any RICO complaint." *Agency Holding Corp.*, 483 U.S. at 154, 107 S.Ct. at 2766; *Granite Falls Bank*, 924 F.2d at 154 (quoting *Malley–Duff*). This pattern requirement is the primary source of RICO's unique character. *Granite Falls Bank*, 924 F.2d at 153.

■ The Act defines a "pattern" as requiring at least two acts of racketeering or predicate acts. 18 U.S.C. § 1961(5); *Manion*, 967 F.2d at 1185; *Diamonds Plus, Inc.*, 960 F.2d at 769. Courts have noted that a RICO "pattern" has two characteristics, "relatedness" and "continuity." *Manion*, 967 F.2d at 1185–86; *Terry A. Lambert Plumbing*, 934 F.2d at 979 (relatedness and continuity of acts is required by the legislative history, citing *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900). Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (citing 18 U.S.C. § 3575(e)). Continuity requires proof of "related predicates extending over a substantial period of time" or "involving a specific threat of repetition extending indefinitely into the future." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902 (proof that predicate acts are "part of an ongoing entity's regular way of doing business" may suffice to meet "continuity" requirement).

As defendants often reminded the court in oral arguments, the "at least two acts of racketeering activity" requirement in 18

---

8. Setting aside other difficulties with such a pleading, if it had been pleaded and could be shown that the law firm and the client formed an association-in-fact for the purposes of pursuing a shared purpose, and if the complaint alleged conduct of the associational enterprise through racketeering activity by clients and an attorney, the complaint might allege the conduct of the right enterprise's affairs through the necessary, illegal means. Such is not pleaded here.

U.S.C. § 1961(5) "is only a minimum requirement," and two might not be enough. *Diamonds Plus, Inc.*, 960 F.2d at 769 (citing *H.J. Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900). The requirements that the acts be related and amount to or pose a threat of continued criminal activity are also essential. *Id.* The Eighth Circuit Court of Appeals has noted that "[u]ltimately, the existence of a pattern is a question of fact." *Id.* (citing *Terry A. Lambert Plumbing*, 934 F.2d at 980).

The continuity requirement involves primarily the court's examination of the length of time during which the conduct occurred. *Terry A. Lambert Plumbing*, 934 F.2d at 980; *Atlas Pile Driving Co.*, 886 F.2d at 994.[9] The Eighth Circuit Court of Appeals has declined to determine what period of time is needed to establish continuity. *Terry A. Lambert Plumbing*, 934 F.2d at 980. Instead, the court has held that a period of "over three years" was sufficient, *Atlas Pile Driving Co.*, 886 F.2d at 994, but a single transaction, with only one victim, taking place over a short period of time does not constitute a "pattern of racketeering" sufficient to sustain a RICO claim. *Terry A. Lambert Plumbing*, 934 F.2d at 981. However, the Eighth Circuit Court of Appeals has recognized that a period of seven months may be sufficient, if the plaintiff can demonstrate the predicate acts constitute more than "sporadic crime." *Nabors*, 45 F.3d at 241.

It is the "relatedness" factor that is fatal to some of the allegations of predicate acts alleged to form part of the "pattern of racketeering activity" here, specifically, the allegations of mail fraud. What the court finds to be fatal to these allegations is the absence of factual allegations identifying with sufficient specificity any predicate acts of mail fraud such that the court can determine in what way they may or may not be related. The bald allegations of mail fraud do not identify the acts, actors, or victims sufficiently for the court to determine whether or not they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14; *Manion*, 967 F.2d at 1185–86. Asserting that "defendants repeatedly caused letters and other matters and things to be delivered by the United States Postal," Complaint, ¶ 107, at unspecified times within a period of several months to persons identified only generally as other defendants, the court, and the plaintiff, *id.*, is inadequate as a matter of law to demonstrate or to allege either a RICO "pattern" of mail fraud or the underlying racketeering acts of mail fraud themselves. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir.1994) (mail or wire fraud must be pleaded with particularity required by *Fed.R.Civ.P.* 9(b)); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993) (for mail or wire fraud, plaintiff must, within reason, allege time, place, and content, and identity of parties to communications); *Boston & Maine Corp. v. Town of Hampton*, 987 F.2d 855, 865 (1st Cir.1993) (mail or wire fraud predicate act for RICO must be pleaded with particularity, but burden of Rule 9(b) is alleviated somewhat by allowing general averments of state of necessary mind, and where information is peculiarly within the defendants' hands); *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir.1992) (Rule 9(b) requirements applicable to allegations of mail or wire fraud); *Midwest Grinding Co., Inc.*

---

9. There is at times a suggestion in the cases and, perhaps, in the arguments of the parties here, of a confusion between the continuity requirement for an "enterprise" and the continuity requirement for a "pattern" of racketeering activity. Although "continuity" in both contexts requires more than "sporadic crime," *Nabors*, 45 F.3d at 240, failure to meet the requirement of continued criminal activity does not negate the "enterprise" element; it only negates the "pattern" requirement. What is required to meet the "continuity" factor of the "enterprise" element is a *structural* consideration, specifically, whether the enterprise has "'an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than *ad hoc* basis,'" because *ad hoc* organization would suffice to commit merely "sporadic" crimes. *Nabors*, 45 F.3d at 240–41 (quoting *United States v. Kragness*, 830 F.2d 842, 856 (8th Cir.1987). However, the "continuity" factor of the "pattern" requirement is *temporal*, requiring instead "'a series of related predicates extending over a substantial period of time.'" *Manion*, 967 F.2d at 1185–86 (quoting *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902).

*v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992) (Rule 9(b) standards applicable to allegations of mail or wire fraud); *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir.1992) (Rule 9(b) requirements apply to allegation of mail or wire fraud RICO predicate, citing *Landry v. Air Line Pilots Ass'n Int'l AFL–CIO,* 901 F.2d 404, 430 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990)); *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923–24 (7th Cir.1992) (for mail or wire fraud, plaintiff must, within reason, allege time, place, and content, and identity of parties to communications); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago,* 927 F.2d 988, 992–93 (7th Cir.1991) (Rule 9(b) standards applicable to allegations of mail or wire fraud); *U.S. Textiles, Inc. v. Anheuser– Busch Cos.,* 911 F.2d 1261, 1268 n. 6 (7th Cir.1990) (for mail or wire fraud, plaintiff must, within reason, allege time, place, and content, and identity of parties to communications); *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 291 (1st Cir.1987) (RICO plaintiff asserting wire or mail fraud "must go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud," but allowing some discovery before requiring specificity of pleading mail or wire fraud predicate acts for RICO claim); *Schreiber Distributing Co. v. Serv– Well Furniture Co., Inc.,* 806 F.2d 1393, 1401 (9th Cir.1986) (to allege mail or wire fraud predicates for RICO claims, plaintiff must state the time, place, and specific content of the false representations as well as the identities of the parties to the representations as required by Rule 9(b)). Thus, if Bryan Reynolds's RICO claim depended solely upon the allegations of mail fraud, the claim would also be subject to dismissal.

However, the RICO claim is also founded on several instances of alleged extortion, pleaded with significantly greater specificity.[10] Defendants urge that these allegations are also insufficient, as to "continuity," because they were all allegedly in aid of a single scheme, and therefore do not demonstrate a "pattern" of racketeering activity, citing *United States v. Kragness,* 830 F.2d 842, 858 (8th Cir.1987) ("[W]here all the predicate acts were committed in furtherance of a single 'scheme,' there is not sufficient continuity among the acts to meet the pattern requirement."); *Holmberg v. Morrisette,* 800 F.2d 205, 209–10 (8th Cir.1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1953, 95 L.Ed.2d 526 (1987); *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257–58 (8th Cir.1986). Bryan Reynolds asserts, however, that defendants' authority on this issue has been overruled, and RICO does not require "multiple schemes." Hence, he contends, his allegations of a pattern of extortionate activity is sufficient to sustain his RICO claim.

Bryan Reynolds is correct that the so-called "multiple scheme" requirement has been specifically overruled. In *Police Retirement Sys. of St. Louis v. Midwest Investment Advisory Serv., Inc.,* 940 F.2d 351 (8th Cir.1991), the Eighth Circuit Court of Appeals acknowledged this fact:

> We had taken a narrow view of what would be a "pattern of racketeering activity" sufficient to satisfy the statutory requirement. 18 U.S.C. § 1962 (1984 & Supp.1991). The short of it was this: we refused to recognize a pattern of activity if all the alleged illegal acts were part of a single scheme. *See, e.g., Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986). It was our multiple-scheme requirement that snagged the [plaintiff's] RICO counts in the District court....

> The Supreme Court has since corrected our thinking about the RICO Act's pattern requirement. In *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Court reversed a decision of this Court applying the multi-scheme understanding of a pattern. The Court held that related

---

10. At oral arguments, Bryan Reynolds also asserted that there were several instances of wire fraud and witness tampering pleaded with sufficient specificity. The court agrees that such incidents are pleaded with the necessary factual specificity, but they are never specifically designated as "wire fraud" or "witness tampering," nor identified as § 1961 predicate acts under those designations. Were the RICO allegations otherwise sound, these technical inadequacies would pose no bar, because of the adequacy of the factual allegations.

acts of racketeering that extend over time or imply a threat that they will be repeated can form a pattern of continued criminal activity. *Id.* 492 U.S. at 238, 109 S.Ct. at 2900. It expressly disapproved our multi-scheme interpretation of the pattern requirement. *Id.* 492 U.S. at 240, 109 S.Ct. at 2901.

*Police Retirement Sys.*, 940 F.2d at 358. There can be little doubt now that defendants' resurrection of the multiple scheme requirement is unavailing, and, had that been the only asserted barrier to the RICO claim here, it would hardly have been insuperable. *Fusco,* 676 F.2d at 334.

▮▮▮▮ Similarly flawed is another of defendants' assertions of a lack of "continuity," this time defendants' assertion that there is no allegation of "continued criminal activity." This argument was disposed of by the next reported decision after *Police Retirement Sys.,* which again relies upon the Supreme Court's decision in *H.J. Inc.* In *Lange v. Hocker,* 940 F.2d 359 (8th Cir.1991), the Eighth Circuit Court of Appeals held that

> continuity can be shown in one of two ways—closed-ended continuity or open-ended continuity. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." [*H.J. Inc.,* 492 U.S.] at 242, 109 S.Ct. at 2902. Where continuity cannot be established in such a manner, a RICO violation may be shown when a "*threat* of continuity is demonstrated." *Id.* (emphasis in original).

*Lange,* 940 F.2d at 361. Thus, in *Lange,* the court found that the plaintiff had failed to allege closed-ended continuity, by asserting predicate acts committed only within a few weeks of each other, while the plaintiff had failed to prove open-ended continuity, because the RICO defendants were no longer in a position with the alleged RICO enterprise to play a management role, precluding

any "*threat* of continuity." *Id.* at 361–62; *see also Thornton v. First State Bank of Joplin,* 4 F.3d 650, 652 (8th Cir.1993) ("While ' "continuity" ' is both a closed- and open-ended concept," there is no continued criminal activity or threat of continued criminal activity from "predicate acts extending over a few weeks or months and threatening no future criminal conduct," quoting *H.J. Inc.,* 492 U.S. at 241–42, 109 S.Ct. at 2902); *McDonald v. Schencker,* 18 F.3d 491, 497 (7th Cir.1994) (continuity is both a closed- and open-ended concept, citing factors for determining whether a closed period of predicate acts is sufficient to meet the continuity requirement). Thus, where, as here, the plaintiff has alleged predicate acts during a period of just over one year, from October of 1990 through November of 1991, there is no requirement that the threat of such acts continue to the present day. The lengthy pattern of predicate acts alone "amounts to" continued criminal activity. *Diamonds Plus, Inc.,* 960 F.2d at 769 (stating continuity requirements in the alternative as conduct amounting to or threatening continued criminal activity); *Lange,* 940 F.2d at 361 (treating continuity requirement as provable in either of two ways: either by proving a closed-ended pattern of sufficient substance to amount to continued criminal activity, or by proving an open-ended pattern that poses a "*threat* of continuity"). If the misconduct has been sufficiently long-lived, and involved sufficient and sufficiently-related acts to constitute a pattern of, not just sporadic, criminal conduct, it meets the requirements of the statute. *H.J. Inc.,* 492 U.S. at 242–43, 109 S.Ct. at 2902. The court concludes that allegations of predicate acts here, stretching from October of 1990 to November of 1991,[11] and involving numerous related acts of extortion, as well as what the court will recognize as many acts of witness tampering and wire fraud, pleaded with the specificity missing from the allegations of mail fraud, meet these "pat-

---

11. The Eighth Circuit Court of Appeals has declined to determine what period of time is needed to establish continuity, *Terry A. Lambert Plumbing,* 934 F.2d at 980, but a period of thirteen months is a comfortable happy medium between a period of "over three years," *Atlas Pile Driving Co.,* 886 F.2d at 994, and the "short

time" of a few months, *Terry A. Lambert Plumbing,* 934 F.2d at 981, and exceeds the seven-month period the Eighth Circuit Court of Appeals approved in *Nabors,* albeit contingent upon a showing that these acts constituted more than "sporadic crime." *Nabors,* 45 F.3d at 241.

tern" requirements, at least to the extent necessary to defeat a motion to dismiss for failure to state a claim pursuant to *Fed. R.Civ.P.* 12(b)(6). Again, were the allegations of conduct of the enterprise not deficient, the alleged pattern of criminal conduct, albeit only as to the allegations of extortion, witness tampering, and wire fraud, but not as to mail fraud, would be sufficient on this ground to sustain the RICO claim.

■ The defendants assert, however, that not all of the acts alleged can constitute "predicate acts," because not all of those acts were "illegal" or "criminal" acts. Although this argument has been made generally as to all three RICO defendants, it was made most specifically as to defendant Orzechowski, for whom it was argued that merely drafting a stipulation cannot be a criminal act. However, drawing only reasonable inferences from the pleadings, *Westcott,* 901 F.2d at 1488, plaintiff has alleged that Orzechowski knowingly participated in the extortion of a settlement of the divorce and that the drafting and presentation of extorted stipulations each constitute a separate crime of extortion. Furthermore, a reasonable inference to be drawn from the pleadings is that Orzechowski also participated in the extortion of the termination of Bryan Reynolds's parental rights in J.R. and Joshua.

Defendants take a final cut at the "continuity" of plaintiff's allegations of predicate acts. Defendants assert that these acts, at least as to Orzechowski, took place only over a period of a few months, between late November or early December of 1990, when she allegedly told Bryan Reynolds's divorce attorney in a telephone conversation that Lisa would drop the abuse charges if Bryan agreed to terminate his parental rights to J.R. and Joshua, and February 21, 1991, when she allegedly participated in the extorted termination of Bryan Reynolds's parental rights in J.R. and Joshua. Furthermore, they argue that there is no threat of continuation of such allegedly criminal activity. Bryan Reynolds argues that he has alleged a conspiracy, and therefore all of the acts of all of the defendants are chargeable against each defendant. Thus, he appears to argue that the limited time period he has alleged as encompassing defendant Orzechowski's commission of alleged predicate acts is extended to include all predicate acts of other defendants in determining whether a "pattern" exists in which Orzechowski participated.

■ It is true that Bryan Reynolds has alleged a conspiracy, pursuant to § 1962(d), but that has no effect, in this court's reading of the RICO statute, upon how the court determines whether there are sufficient allegations that a particular defendant has violated § 1962(c) by conducting the affairs of the alleged RICO enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). Section 1962(c) is not a conspiracy provision. *United States v. Bennett,* 44 F.3d 1364, 1372 (8th Cir.1995) ("A substantive RICO charge, however, remains just that—a substantive charge—and not a conspiracy," citing *United States v. Pungitore,* 910 F.2d 1084, 1114 (3d Cir.1990), *cert. denied,* 500 U.S. 915, 111 S.Ct. 2010, 114 L.Ed.2d 98 (1991)). Rather, what it proscribes is the conduct by "any person" of the "[RICO] enterprise's affairs through a pattern of racketeering activity...." *Id.* Thus, the court concludes that only a particular defendant's conduct may be assessed in determining whether that defendant conducted the affairs of the enterprise through a pattern of racketeering activity. *Bennett,* 44 F.3d at 1372 ("In order to prove that an individual participated in an enterprise through a pattern of racketeering activity, the [plaintiff] must prove only that the individual "associated with" the enterprise and that he engaged in two acts of racketeering that were related to the activities of, or affected, that enterprise.").

■ Nonetheless, the court cannot conclude as a matter of law that, as to defendant Orzechowski, a closed-ended period of approximately three months is insufficient where the predicate acts as alleged are so closely related. *Nabors,* 45 F.3d at 241. This court will not decide what the Eighth Circuit Court of Appeals has consistently refused to decide, which is what time frame for predicate acts is sufficient or insufficient as a matter of law to support a RICO claim. *Primary Care Inv., Seven, Inc. v. PHP Healthcare Corp.,* 986 F.2d 1208, 1215 (8th

Cir.1993) ("No Eight Circuit case has set a minimum period of time over which the predicate acts must extend in order to be 'substantial.'"); *Terry A. Lambert Plumbing,* 934 F.2d at 980. However, the court acknowledges that such a relatively brief period is certainly uncomfortably close to the minimum period of time that should sustain a RICO claim. *See, e.g., Primary Care,* 986 F.2d at 1215–16 (citing cases in which periods of less than one year were held to be insufficient to meet the continuity requirement). Were such a period of time insufficient to sustain a closed-ended RICO pattern, the court would be unlikely to find for itself that there are anywhere in the pleadings allegations from which it could reasonably be inferred that extortion is Orzechowski's regular way of conducting her on-going business, such that there would be the requisite threat of continued criminal activity to sustain an open-ended pattern. *H.J. Inc.,* 492 U.S. at 242–43, 109 S.Ct. at 2902 (showing that the "acts or offenses are part of an ongoing entity's regular way of doing business" suffices to show threat of continued criminal activity); *Manion,* 967 F.2d at 1185–86; *Lange,* 940 F.2d at 361. However, drawing all reasonable inferences from the allegations, a jury possibly could do so, because Orzechowski still practices law with the same firm. *Cf. Lange,* 940 F.2d at 361–62 (plaintiff failed to prove open-ended continuity, because the RICO defendants were no longer in a position with the alleged RICO enterprise to play a management role, precluding any "threat of continuity"). Thus, although there are deficiencies as to the pleading of any mail fraud predicate acts, the complaint in this matter does adequately plead a RICO "pattern" as to each defendant. Were the RICO claim not fatally flawed as to the "conduct" element, the allegations of the "pattern" element are not so deficient as to pose an insuperable bar to Bryan Reynolds's RICO claim. *Fusco,* 676 F.2d at 334.

■ *iv. Causation.* Defendants assert that as alleged, the predicate acts were not the cause of any harm to the plaintiff, because, according to the complaint, the property settlement stipulation ultimately adopted by the court was not one of the ones allegedly extorted from the plaintiff. In *Sed-*

*ima,* the Supreme Court held that "the compensable injury [from a RICO violation] is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.... Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts." *Sedima,* 473 U.S. at 497, 105 S.Ct. at 3285 (footnotes omitted); *Bowman,* 985 F.2d at 385 (quoting *Sedima,* and describing this as the "proximate cause" requirement). Defendants' assertion that the predicate acts alleged did not cause the plaintiff any harm is flawed, however. The entry of a stipulation extorted from the plaintiff was not the only harm alleged. Instead, a reasonable inference from the facts alleged, *Westcott,* 901 F.2d at 1488, is that the harms included compelling the defendant to enter into a stipulation against his interest, causing him to lose property and assets, compelling him to consent to the termination of his parental rights, compelling him to make a payment to the law firm, and otherwise compelling him to negotiate his divorce settlement at a disadvantage. These are real and, at least in some circumstances, compensable injuries, whether or not the state court ultimately approved one of the stipulations extorted from the plaintiff.

■ However, at oral arguments, the defendants also argued that these injuries are not compensable injuries under RICO, because they are not injuries to the plaintiff's "business or property." Defendants cite as supporting their view *Doe v. Roe,* 958 F.2d 763 (7th Cir.1992); *Berg v. First State Ins. Co.,* 915 F.2d 460 (9th Cir.1990); *Rylewicz v. Beaton Serv., Ltd.,* 888 F.2d 1175 (7th Cir. 1989); *Hibbard v. Benjamin,* Slip Op., Civ.A. No. 90–10361, 1992 WL 300838 (D.Mass. 1992).

RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's

fee." 18 U.S.C. § 1964(c); *Bieter Co. v. Blomquist,* 987 F.2d 1319, 1325 (8th Cir. 1993); *Bowman,* 985 F.2d at 384. This provision confers standing on any individual who has experienced injury to his or her business or property that occurred "by reason of" a RICO violation. *Bowman,* 985 F.2d at 384. More specifically, in *Sedima,* the Supreme Court held that "the plaintiff only has standing if, *and can only recover to the extent that,* he has been injured in his *business or property* by the conduct constituting the violation." *Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285 (emphasis added). In this case, defendants assert that there can be no recovery, because there has been no injury to the plaintiff's business or property.

In *Brennan v. Chestnut,* 973 F.2d 644 (8th Cir.1992), the Eighth Circuit Court of Appeals held that airline pilots had alleged no injury to their business or property, because they had alleged only injuries arising from their status as employees, even though those injuries were also alleged to arise from their status as shareholders. *Brennan,* 973 F.2d at 648 ("We find that the pilots' complaint does not assert a viable RICO claim based on their status as shareholders as the pilots have made no allegation of direct and individual injury to their business or property resulting from their status as shareholders, rather than from their status as employees."). Thus, it appears that mere injuries to employment or income from employment are not RICO injuries. Furthermore, "personal injuries and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.'" *Bast v. Cohen, Dunn & Sinclair, P.C.,* 59 F.3d 492, 495 (4th Cir.1995) (citing *Doe,* 958 F.2d at 767–70). However, other courts have been more willing to consider lost wages as a RICO injury. *See Libertad v. Welch,* 53 F.3d 428, 437 n. 4 (1st Cir.1995) (allegations that plaintiffs felt intimidated and harassed did not state RICO injuries, although evidence of injury to business or property "such as lost wages or travel expenses, actual physical harm, or specific property damages" as the result of RICO acts could suffice); *Schiffels v. Kemper Financial Serv., Inc.,* 978 F.2d 344, 353 (7th Cir.1992) ("injury 'to business or proper-

ty' does not include .... personal injuries, even if those injuries resulted in a pecuniary loss," citing *Berg,* 915 F.2d at 464, but opining that loss of a job was "probably an injury to [plaintiff's] 'business' ").

Turning to the cases cited by the defendants, in both *Doe* and *Rylewicz,* the Seventh Circuit Court of Appeals held that RICO's injury requirement in § 1964(c) would not permit the plaintiffs to recover for "personal injuries." In *Doe,* the court held that personal and mental injuries fall outside the scope of the statute. *Doe,* 958 F.2d at 767–68. Specifically, the court rejected as a compensable property interest under RICO an alleged property interest in "sexual labor" provided in forgiveness of debts. *Id.* at 768. In *Rylewicz,* the injuries alleged, and held to be personal injuries outside of the scope of RICO injuries, included "harassment, intimidation, and terrorism" in order to influence testimony in bankruptcy court and to force the plaintiffs to accede to a compromise of a jury verdict in their favor in other litigation. *Rylewicz,* 888 F.2d at 1180 & 1178. Similarly, in *Berg,* the Ninth Circuit Court of Appeals held that the alleged intangible property interest in insurance policies lost when those policies were cancelled involved no financial loss, but only a personal injury in the form of emotional distress, and therefore did not state a claim for an injury to property within the meaning of § 1964(c). *Berg,* 915 F.2d at 464. In the case cited by defendants that is most nearly on point, *Hibbard,* the district court considered a case in which the alleged RICO defendants interfered to the plaintiff's detriment in divorce and child custody proceedings. *Hibbard,* 1992 WL 300838, *2. The court construed the RICO requirement of injury to "business or property" to mean "only commercial interests." *Id.* at *3 (citing *Van Schaick v. Church of Scientology of Cal. Inc.,* 535 F.Supp. 1125, 1137 (D.Mass.1982); *Savastano v. Thompson Medical Co.,* 640 F.Supp. 1081, 1087 (S.D.N.Y.1986)). The court held that the plaintiff's alleged "losses" in the divorce proceedings consisted only of personal assets, but no injury to a business interest or property related to a business, and therefore failed to state a RICO claim. *Id.* Not all

courts, however, have limited the "property" injury to injuries to "commercial" property. In *Oscar v. University Students Co-op. Ass'n*, 965 F.2d 783 (9th Cir.1992), the court held that loss of use and enjoyment of an apartment was not a RICO injury, not because it involved non-commercial property, the plaintiff's personal residence, but because the injury was not a tangible injury to the property. *Oscar*, 965 F.2d at 787.

■ Thus, it is plain that any emotional distress caused by the termination of his parental rights or by any of the other conduct of the defendants is not a RICO injury. *Libertad*, 53 F.3d at 437; *Schiffels*, 978 F.2d at 353. However, the court cannot find as a matter of law that loss of non-business property, such as the marital home in this case, or loss of income is not a RICO injury. *Libertad*, 53 F.3d at 437 n. 4; *Oscar*, 965 F.2d at 787 (personal residence was property within meaning of RICO, but intangible loss to that property was not RICO injury). Indeed, the plain language of the statute describes the injury as injury in the plaintiff's "business *or* property," 18 U.S.C. § 1964(c) (emphasis added), not merely injury to business or *business* property.[12] The allegations of loss of property here, the marital home, would therefore suffice, at this stage of the proceedings, to state a RICO injury, had the RICO allegations not foundered on lack of conduct of the alleged RICO enterprise.

Similarly, plaintiff's assertions at oral arguments of loss of income as the result of his incarceration and potential harm to his business or employment opportunities because of his incarceration might also suffice to state a RICO injury, but the court does not find in the complaint factual allegations of such loss of income or loss of business or employment opportunities.

*v. Summary.* Whatever the merits of the RICO claim pursuant to § 1962(c) in other respects, it is fatally deficient in its allegation of conduct of the alleged enterprise. *Nolte*, 994 F.2d at 1317 (where the record is "devoid of evidence that defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise," the court need not reach any other element of the § 1962(c) RICO claim before dismissing it). The court does not perceive that the fatal deficiency in the RICO claim here can be rectified by repleading of the complaint, and therefore must simply dismiss the RICO claim in its entirety. *Dorn v. State Bank of Stella*, 767 F.2d 442, 442–43 (8th Cir.1985) (outright dismissal is not inappropriate, and amendment of complaint is inappropriate "if the court has clearly indicated either that no amendment is possible or that dismissal of the complaint also constitutes dismissal of the action," quoting *Czeremcha v. International Association of Machinists and Aero-*

---

**12.** "The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); *United States ex rel. Harlan v. Bacon*, 21 F.3d 209, 210 (8th Cir.1994) ("When construing a statute, we are obliged to look first to the plain meaning of the words employed by the legislature," and the court "must give effect to the unambiguously expressed intent of Congress," citing *Chevron* ); *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir.1992) ("When interpreting statutory language, the court must first look to the plain meaning of the language," citing *North Dakota v. United States*, 460 U.S. 300, 312–13, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983)). The Supreme Court describes this rule as the "one, cardinal canon before all others." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 112 S.Ct. 1146, 117 L.Ed.2d

391 (1992). Thus, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* (citing, *Ron Pair*, 489 U.S. at 241–242, 109 S.Ct. at 1030; *United States v. Goldenberg*, 168 U.S. 95, 102–103, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897); *Oneale v. Thornton*, 6 Cranch 53, 68, 3 L.Ed. 150 (1810)). When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030 (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)); *Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1502 (8th Cir.1992) (plain meaning of a statute governs over ambiguous legislative history, citing *Ron Pair Enterprises* ). As I recently observed in another case involving statutory interpretation, "Judicial fathoming of Congressional intent is often a treacherous voyage. That is not so here." *Furrer v. Brown*, 62 F.3d 1092, 1102 (8th Cir.1995) (Bennett, District Judge, concurring).

*space Workers,* 724 F.2d 1552, 1556 n. 6 (11th Cir.1984)).

### c. RICO conspiracy

■ Bryan Reynolds asserted in his brief, and reiterated at oral arguments, that whatever the deficiencies of his allegations of violation of § 1962(c), defendants had not moved to dismiss his RICO conspiracy claim pursuant to § 1962(d). However, he acknowledged at oral arguments that the defendants had moved to dismiss Count I, in which both the § 1962(c) and (d) claims are to be found, in its entirety. Although the defendants made no arguments in their briefs pertaining specifically to the RICO conspiracy claim, at oral arguments they did assert that there was no allegation of an agreement in the complaint to sustain the conspiracy claim. Defendants cited *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990), as holding that failure to allege any agreement involving each of the defendants to commit at least two predicate acts was fatal to the conspiracy claim. Furthermore, they asserted that "common sense" required dismissal of a conspiracy claim where the allegations of the substantive claim were deficient.

Whether a RICO conspiracy has been adequately pleaded involves some of the same issues involved in assessing the adequacy of the pleading of a substantive RICO violation. For example, in *Bowman,* the Eighth Circuit Court of Appeals grappled with the relationship between the overt acts in furtherance of a RICO conspiracy and the predicate acts that must be alleged to sustain a substantive RICO claim. *Bowman,* 985 F.2d at 386–388. Recognizing a split in the circuits as to whether the overt act alleged in furtherance of the conspiracy must necessarily be a predicate act under § 1961, the court ultimately came to the following conclusion:

> We hold that standing to bring a civil suit pursuant to 18 U.S.C. § 1964(c) and based on an underlying conspiracy violation of 18 U.S.C. § 1962(d) is limited to those individuals who have been harmed by a § 1961(a) RICO predicate act committed in furtherance of a conspiracy to violate RICO. Because Bowman, who contends that he was fired for protesting, speaking out against,

and criticizing Western Auto's double billing scheme, has not alleged such an injury, he lacks standing to bring this civil RICO action.

*Bowman,* 985 F.2d at 388. In the present case, however, Bryan Reynolds has alleged a number of acts by each defendant alleged to be part of the RICO conspiracy that violated § 1961(1), and has alleged that these acts were in furtherance of the conspiracy. As to another issue common to both substantive and conspiracy claims under RICO, the Eighth Circuit Court of Appeals held that an alleged conspiracy lasting no more than three or four months failed to allege a conspiracy of sufficient duration to sustain a racketeering claim. *Information Exchange Sys. v. First Bank,* 994 F.2d 478, 485 (8th Cir.1993).

In *Bennett,* the Eighth Circuit Court of Appeals made plain the relationship between the a substantive RICO violation under § 1962(c) and a conspiracy to commit such a violation under § 1962(d). While pleading of the substantive violation requires the elements discussed above, "[a] RICO conspiracy requires proof of the additional element of an agreement." *Bennett,* 44 F.3d at 1374. Thus, defendants quite rightly look for an allegation of an agreement, and quite correctly point out that there is none. Although proof of an association-in-fact enterprise may also prove an unlawful agreement to commit a RICO violation, *id.,* the court does not believe this relieves the plaintiff of the obligation to plead all of the elements of the offense alleged, including the agreement. Furthermore, because the plaintiff here has alleged an enterprise that is a legal entity, and not one that is an association-in-fact, he has in no wise proved an agreement by proving the enterprise. *Id.*

Furthermore, the inadequacy of the allegations of conduct of the alleged RICO enterprise is as fatal to the RICO conspiracy claim as it is to the substantive RICO claim. *Id.* Conduct of the enterprise remains an element of the conspiracy offense, and the court has found that plaintiff has not and cannot plead conduct of the RICO enterprise by these RICO defendants. Therefore, plaintiff's RICO conspiracy claim founders on

both the failure to allege an agreement at all, and the failure adequately to allege conduct of the RICO enterprise. Count I must be dismissed in its entirety.

### C. Lack Of A Federal Question

The dismissal of Count I leaves this case without a federal question upon which to base federal court jurisdiction. The court must therefore consider whether or not to retain jurisdiction over the pendent state law claims in Counts II–IX.

Prior to enactment of the federal supplemental jurisdiction statute, 28 U.S.C. § 1367, in 1990, a federal court's authority to exercise pendent jurisdiction over a state law claim was a matter of discretion involving the weighing of several factors:

> In [United Mine Workers v.] Gibbs, [383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966),] the Court set out the basic principles which should be applied where federal and state claims are presented together. First, the federal claim must be substantial enough for the vesting of subject-matter jurisdiction. Second, the federal and state claims must present one constitutional "case." If they derive from a common nucleus of operative fact, and if aside from their federal or state character, they normally would be tried in one proceeding, this element is present. Third, even if the court has the power in a constitutional sense to hear the entire case, it need not do so, for "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." 383 U.S. at 726, 86 S.Ct. at 1139. The exercise of the court's discretion involves "considerations of judicial economy, convenience and fairness to litigants" and "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." Ibid.

Koke v. Stifel, Nicolaus & Co., Inc., 620 F.2d 1340, 1345–46 (8th Cir.1980); see also Hess v. St. Joseph Police Pension Fund, 788 F.2d 1344, 1346 (8th Cir.1986) (discretion to entertain state claims should be exercised when judicial economy, convenience, and fairness weigh in favor of adjudication of the state claims). The advantages of adjudication of state law claims with federal claims are realized when the claims require similar types of proof and there is no prejudice to the parties as the result of hearing both claims. Hess, 788 F.2d at 1347. Review of the court's exercise of pendant jurisdiction must be made "at every stage of the litigation." Carnegie–Mellon University v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (citing the Gibbs factors). In the absence of an independent basis of jurisdiction, "when the federal claim drops out before trial, and a complete trial of the facts would be necessary to determine the state claim, the federal court should not proceed with such a trial." Curtis v. Sears, Roebuck & Co., 754 F.2d 781, 785 (8th Cir.1985).

Most of the factors involved in the court's analysis of whether or not to exercise pendant jurisdiction stated above are retained and codified in the statute defining the supplemental jurisdiction of the federal courts:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (West Supp.1991). A court "may decline to exercise supplemental jurisdiction" if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (West Supp.1991). Where the case clearly fits within one of the subsections listed above, the court may decline to exercise supplemental jurisdiction. Packett v. Stenberg, 969 F.2d 721, 726–27 (8th Cir.1992); see also O'Connor v. State of Nev., 27 F.3d 357, 362 (9th Cir.1994); Growth

*Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277, 1285 n. 14 (3d Cir.1993); *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 65–66, n. 3 (2d Cir.1991); *Carroll v. Borough of State College*, 854 F.Supp. 1184, 1200 (M.D.Pa.1994), *aff'd mem.*, 47 F.3d 1160 (3d Cir.1995).

Here, the case now stands in the circumstances identified in 28 U.S.C. § 1367(c)(3): the district court has dismissed the only claim over which it has original jurisdiction. The parties expressed uncertainty at oral arguments as to what their positions on the exercise of supplemental jurisdiction would be if the court dismissed the only federal claim. They requested the opportunity to brief or argue the supplemental jurisdiction question in the event the court dismissed the RICO claim. That request is denied. The court here makes a full consideration of the factors it is entitled to consider under the supplemental jurisdiction statute and applicable case law in determining whether to continue to exercise supplemental jurisdiction over the remaining state law claims.

The court does not find any specific reasons why it should retain jurisdiction, and several reasons why it should not. First, this case clearly fits within one of the grounds for declining to exercise supplemental jurisdiction stated in the statute, § 1367(c)(3). *Packett*, 969 F.2d at 726–27. Second, some of the issues involved in the state claims may be sufficiently novel or complex that the state court is the proper forum pursuant to § 1367(c)(1). Furthermore, judicial economy suggests that this federal court not continue to hear numerous state law claims when it has dismissed the only federal claim relatively early in the litigation, before any answers have been filed or any discovery has been undertaken. *Koke*, 620 F.2d at 1345–46. This procedural posture of the case also suggests that there would be no unfairness to the parties in pursuing the matter in state court. *Id.* This court should also avoid "[n]eedless decisions of state law" as a matter of comity to the state courts, including entertaining here any challenges to the adequacy of the pleading of the state law claims. *Id.* Finally, the court sees no reason why it should assume that the state court, literally just down the block from this federal court, is less convenient to the litigants, nor does it believe that the parties have any reason to doubt the fairness of litigating this matter in state court. *Id.*[13] Therefore, the court declines to exercise supplemental jurisdiction over the remaining state-law claims, and this matter must be dismissed in its entirety. Plaintiffs may refile their state-law claims in state court pursuant to Iowa's "failure of action" statute.[14]

13. The court recognizes that there may be some reasons why the parties would have some reluctance about taking this matter to state court. Obviously, Mr. Reynolds's experiences with state court were less than happy. However, the proceedings in state court were infected with unfairness from outside, rather than inside, the judicial machinery. Also, the Law Firm Defendants may be less than anxious to litigate in a court in which they routinely practice. However, that concern holds as true for this court as for the state court, and the court knows of no reason why the state court should be any less able than this court to render a decision on the merits rather than on any other basis.

14. Iowa Code § 614.10, Iowa's "failure of action" statute, provides as follows:

If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.

In order for a plaintiff's cause of action to come within section 614.10, there are four requirements:

1. The failure of a former action not caused by plaintiff's negligence.
2. The commencement of a new action brought within six months thereafter.
3. The parties must be the same.
4. The cause of action must be the same. *Beilke v. Droz*, 675 F.2d 194, 195 (8th Cir.1982) (citing *Hartz v. Brunson*, 231 Iowa 872, 2 N.W.2d 280, 283 (1942)). In *Beilke*, the U.S. District Court for the Eastern District of Wisconsin had dismissed a lawsuit against the insurer on the ground that the insurer may not be sued directly under a Wisconsin statute. *Id.* The suit was refiled in federal court in Iowa, and the court determined that Iowa Code § 614.10 would permit the action to go forward if the insured and the insurer were the "same party" within the meaning of the statute. *Id.* The Eighth Circuit Court of Appeals certified to the Iowa Supreme Court the question of whether an insured and its insurance company were "the same" within the meaning of the statute. *Id.* The Iowa Supreme

## IV. CONCLUSION

The court concludes that the Law Firm Defendants' January 26, 1995, motion to dismiss the first amended complaint, joined in by defendant Condon on February 1, 1995, and defendant Reynolds on February 2, 1995, must be denied as moot. This motion to dismiss challenges the sufficiency of a complaint that the plaintiff has since withdrawn. However, more complicated issues were presented by the remaining motions to dismiss.

In the remaining motions to dismiss and joinder in those motions, the defendants challenged the timeliness of plaintiff's RICO complaint under the applicable four-year statute of limitations. The court concludes, however, that the RICO claim, first offered in the second amended complaint, relates back to the filing of the original complaint pursuant to *Fed.R.Civ.P.* 15(c), because it arose from the same nucleus of operative facts pleaded in the original complaint. The court also concludes that a reasonable inference to be drawn from the pleadings is that the plaintiff's RICO claim accrued within the four years preceding filing of the original complaint.

The court turned next to the adequacy of the pleading of the elements of a substantive RICO claim under § 1962(c). Although the court concludes that a law firm may properly be a "RICO enterprise," the court concludes that there are no adequate allegations, nor could there be, that the RICO defendants "conducted" the affairs of that RICO enterprise through a pattern of racketeering. The complaint is replete with allegations that the RICO defendants conducted their own affairs, and is even replete with allegations of RICO predicate acts, but these allegations do not properly tie these acts to conduct of the affairs of the alleged RICO enterprise. This "conduct" element, then, was the fatal one for this particular RICO claim.

Nonetheless, the court considered additional elements, the "pattern" and "causation" elements, of a substantive RICO claim. The court concluded that although the allega-

tions of mail fraud were woefully inadequate, allegations of extortion, and allegations of wire fraud and witness tampering, though not so identified, were pleaded with sufficient particularity and did, for the purposes of a motion to dismiss, meet the requirements of relatedness and continuity. The court concluded that the predicate acts alleged were, at least as pleaded, the causes of injuries to the plaintiff. Although the court concluded that some of the alleged injuries were "personal" injuries, and therefore not RICO injuries to "business or property," other injuries, to property and income, were not as a matter of law purely personal injuries insufficient to support a RICO claim. Thus, only failure to plead the conduct element adequately defeats the RICO substantive claim here.

Failure to plead a conduct element also defeats the plaintiff's RICO conspiracy claim. In addition, there is nowhere in the complaint the requisite allegation of an agreement necessary to sustain a RICO conspiracy claim. Therefore, this RICO claim also cannot survive a motion to dismiss. The RICO count in this lawsuit, Count I, is therefore dismissed in its entirety.

Finally, the court concludes that the dismissal of the only federal claim in this litigation requires that the court decline to exercise supplemental jurisdiction over the many remaining state-law claims. Having considered as far as it was able factors that might argue for or against such dismissal of supplemental claims, the court concludes that this matter properly belongs in state court. Therefore, this case is dismissed in its entirety.

**IT IS SO ORDERED.**

### ORDER REGARDING PLAINTIFF'S MOTION TO RECONSIDER

This matter comes before the court pursuant to plaintiff's November 15, 1995, motion to reconsider the court's memorandum opinion and order of November 3, 1995, dismissing this case for failure to state a federal

Court answered in the affirmative. *Id.* In the present case, the court sees no reason why plaintiff could not meet the requirements of the Iowa "failure of action" statute to refile his state-law

claims in Iowa district court, even if they would otherwise be time barred, because they were timely filed in federal court and have been dismissed through no fault of the plaintiff's.

claim upon which relief can be granted. Defendants resisted the motion to reconsider on December 1, 1995. The court has carefully reviewed the arguments of the parties and its own order, and now enters the following ruling disposing of plaintiff's motion.

## I. INTRODUCTION AND BACKGROUND

In its November 3, 1995, order the court held that plaintiff Bryan Reynolds had failed to state either a substantive or conspiracy claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) & (d), respectively, because plaintiff had not and could not allege conduct of the asserted RICO enterprise, the Klass law firm, by the RICO defendants, a partner in the law firm, Barbara Orzechowski, and two of her clients, Lisa Reynolds and Charles Condon. The court therefore declined to exercise jurisdiction over supplemental state-law claims filed against the RICO defendants and others, and dismissed the case in its entirety in favor of the refiling of plaintiff's state-law claims in state court. *Reynolds v. Condon,* 908 F.Supp. 1494 (N.D.Iowa 1995).

Plaintiff has moved to reconsider the court's order dismissing the case on the grounds that, not only had conduct of the RICO enterprise been sufficiently alleged, but so had all of the other elements of the RICO claim. The plaintiff asserts that the court overlooked factual allegations in the pleadings that must be taken as true, applied an improper legal standard to its determination of whether the one "insider" RICO defendant had "conducted" the RICO enterprise, and dismissed the complaint on a ground not argued by the parties, lack of "conduct," rather than the hotly contested issues of lack of a RICO "pattern" or the adequacy of the pleading of predicate acts. Plaintiff therefore seeks reinstatement of his RICO and other claims or the opportunity to conduct discovery to demonstrate the adequacy of his claims. Defendants have resisted the motion to reconsider on the grounds that the court properly considered all facts alleged and arguments of the parties and applied the proper standards in dismissing the plaintiff's RICO claim. Defendants also assert that plaintiff's motion to reconsider concedes that dismissal was proper as to all but the asserted "insider" RICO defendant, Ms. Orzechowski, and therefore all other defendants are dismissed from the case whatever the court's disposition of the motion to reconsider.

## II. LEGAL ANALYSIS

Before turning to more essential issues in the court's legal analysis of plaintiff's motion to reconsider, the court must first dispel a few misconceptions. First, contrary to defendants' reading, in its ruling, the court did not reach the adequacy of the pleading of any claims other than the RICO claims, and therefore its dismissal of all claims against all defendants does not have the effect of removing "all state law claims ... from the litigation." In its ruling, the court made it abundantly clear that

> the dismissal of the only federal claim in this litigation requires that the court decline to exercise supplemental jurisdiction over the many remaining state-law claims. Having considered as far as it was able factors that might argue for or against such dismissal of supplemental claims, the court concludes that this matter properly belongs in state court. Therefore, this case is dismissed in its entirety.

*Reynolds v. Condon,* 908 F.Supp. 1494, 1510–1511 (N.D.Iowa 1995). Therefore, if the court determines that it improperly dismissed the only federal claims, the RICO claims, it may reconsider whether it should also exercise supplemental jurisdiction over the state-law claims, and all claims could indeed go forward against all defendants in this litigation, except as otherwise limited by a ruling favorable to the plaintiff on his motion to reconsider. Furthermore, even if the court affirms its dismissal, nothing will preclude the plaintiff from pursuing his state-law claims against all defendants in state court.

Second, as shall be discussed more fully in the next subsection, and again contrary to the defendants' contentions, the Eighth Circuit Court of Appeals does recognize authority in the Federal Rules of Civil Procedure for "motions to reconsider." Therefore, this

court will proceed to consideration of plaintiff's motion so designated.

■ Third, contrary to plaintiff's contentions, the parties did indeed argue the adequacy of the pleading of all elements of the RICO claims, either in briefs or oral arguments. Defendants' motions to dismiss attacked the adequacy of the pleading of the RICO claims, which logically included the adequacy of the pleading of each of the elements. The court specifically tested the parties' positions on the "conduct" element during oral arguments, including the extent to which each of the RICO defendants "conducted" the enterprise, either directly or indirectly. The court therefore did not improperly dismiss plaintiff's complaint without the benefit of argument on the ground the court found dispositive. If plaintiff wished he had made more thorough arguments on the "conduct" issue in his brief or oral arguments, or felt he should be given leave to argue the issue further after it was raised, he should have sought leave to do so at the oral arguments. A motion to reconsider is not the proper place to raise arguments that could have been raised prior to the issuance of judgment. *Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 926, 127 L.Ed.2d 218 (1994). Thus, the critical question here is whether the court's dismissal of the RICO claim was legally, not procedurally, proper.

### A. Standards For Motions To Reconsider

■ Although the Eighth Circuit Court of Appeals has commented on the "dangers of filing a self-styled 'motion for reconsideration' that is not described by any particular rule of federal civil procedure," it has also identified the usual bases upon which such motions are construed to have been made in *Sanders v. Clemco Indus.*, 862 F.2d 161 (8th Cir.1988):

> Federal courts have construed this type of motion as arising under either Rule 59(e) (motion to alter or amend the judgment) or Rule 60(b) (relief from judgment for mistake or other reason). *See Spinar v. South Dakota Bd. of Regents*, 796 F.2d 1060, 1062 (8th Cir.1986). The two rules

serve different purposes and produce different consequences, both substantive and procedural. *See A.D. Weiss Lithograph Co. v. Illinois Adhesive Prods. Co.*, 705 F.2d 249, 249–50 (7th Cir.1983) (per curiam). When the moving party fails to specify the rule under which it makes a postjudgment motion, that party leaves the characterization of the motion to the court's somewhat unenlightened guess, subject to the hazards of the unsuccessful moving party losing the opportunity to present the merits underlying the motion to an appellate court because of delay.

*Sanders*, 862 F.2d at 168 (footnotes omitted). Because plaintiff's "motion to reconsider" suffers from precisely this deficiency of identification of the rule upon which it is based, and indeed fails to identify the standards by which such motions, if they exist, are to be judged, the court will briefly discuss the standards applicable to each kind of motion, either pursuant to Rule 59(e) or 60(b), and apply both, at least initially.

Federal Rule of Civil Procedure 59(e) provides as follows:

> **(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

*Fed.R.Civ.P.* 59(e). Thus, *Fed.R.Civ.P.* 59(e) empowers a district court to alter or amend original judgments. *Fed.R.Civ.P.* 59(e). "Although the words 'alter or amend' imply something less than 'set aside,' a court may use Rule 59(e) to set aside the entire judgment." *Sanders v. Clemco Indus.*, 862 F.2d 161, 168 n. 13 (8th Cir.1988) (citing *A.D. Weiss Lithograph Co. v. Illinois Adhesive Prods. Co.*, 705 F.2d 249, 250 (7th Cir.1983); 11 C. Wright, A. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2817, at 111 n. 31 (1973)). However, the limited purpose of a motion to reconsider is " 'to correct manifest errors of law or fact or to present newly discovered evidence.' " *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir.) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir.1987), quoting in turn *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66

(N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir. 1984)), *cert. denied,* 488 U.S. 820, 109 S.Ct. 63, 102 L.Ed.2d 40 (1988). " 'A motion to alter or amend judgment cannot be used to raise arguments which could have been raised prior to the issuance of judgment.' " *Concordia College Corp. v. W.R. Grace & Co.,* 999 F.2d 326, 330 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 926, 127 L.Ed.2d 218 (1994) (quoting *Hagerman,* 839 F.2d at 414); *Hagerman,* 839 F.2d at 413–14 (citing *FDIC v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986)); *Ray E. Friedman & Co. v. Jenkins,* 824 F.2d 657, 660 (8th Cir.1987); *see also LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th Cir.1995) ("A motion to alter or amend a judgment is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment or to present evidence that was available earlier"; citations omitted); *Anderson v. Flexel, Inc.,* 47 F.3d 243, 247–48 (7th Cir.1995); *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992); *Fontenot v. Mesa Petroleum,* 791 F.2d 1207, 1219 (5th Cir.1986). Therefore, a party moving to alter or amend a judgment pursuant to Rule 59(e) " 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.' " *LB Credit Corp.,* 49 F.3d at 1267 (quoting *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d at 1268).

In contrast to a "motion to reconsider" pursuant to *Fed.R.Civ.P.* 59(e), which requires a "manifest error of law or fact" or "newly discovered evidence" to alter or set aside the judgment, a "motion to reconsider" pursuant to *Fed.R.Civ.P.* 60(b), which provides for "relief from [a] judgment or order," requires the moving party to establish "exceptional circumstances" to obtain the "extraordinary relief" the rule provides. *United States v. One Parcel of Property Located at Tracts 10 and 11 of Lakeview Heights, Canyon Lake, Comal County, Texas,* 51 F.3d 117, 119 (8th Cir.1995) (hereinafter, *"One Parcel"*) ("A district court should grant a Rule 60(b) motion 'only upon an adequate showing of exceptional circumstances,' " quoting *United States v. Young,* 806 F.2d

805, 806 (8th Cir.1986), *cert. denied,* 484 U.S. 836, 108 S.Ct. 117, 98 L.Ed.2d 76 (1987)); *Mitchell v. Shalala,* 48 F.3d 1039 (8th Cir. 1995) ("Generally, Rule 60(b) provides for extraordinary relief, which may be granted only upon a showing of exceptional circumstances."); *Atkinson v. Prudential Property Co., Inc.,* 43 F.3d 367 (8th Cir.1994) (also quoting *Young* ); *Schultz v. Commerce First Fin.,* 24 F.3d 1023, 1024 (8th Cir.1994) (also quoting *Young* ); *Robinson v. Armontrout,* 8 F.3d 6 (8th Cir.1993) (also quoting *Young* ); *Reyher v. Champion Int'l Corp.,* 975 F.2d 483, 488 (8th Cir.1992) (Rule 60(b) provides for extraordinary relief which may be granted only on adequate showing of exceptional circumstances). This standard of requiring "exceptional circumstances" in order to provide relief applies even to motions brought on the "catch-all" ground found in Rule 60(b)(6), the only ground potentially applicable here, which provides for relief "for any other reason" found by the court to provide sufficient justification. *Atkinson,* 43 F.3d at 373; *Schultz,* 24 F.3d at 1024; *In re Zimmerman,* 869 F.2d 1126, 1128 (8th Cir.1989). The provisions of Rule 60(b) "do 'not give courts unlimited authority to fashion relief as they deem appropriate.' " *Schultz,* 24 F.3d at 1024 (quoting *In re Zimmerman,* 869 F.2d 1126, 1128 (8th Cir.1989)). Rule 60(b)(6) was intended to provide relief "only where 'exceptional circumstances prevented the moving party from seeking redress through the usual channels.' " *Atkinson,* 43 F.3d at 373 (quoting *In re Zimmerman,* 869 F.2d at 1128). As the Eighth Circuit Court of Appeals observed,

> "[e]xceptional circumstances" are not present every time a party is subjected to potentially unfavorable consequences as a result of an adverse judgment properly arrived at. Rather, exceptional circumstances are relevant only where they bar adequate redress. As noted above, Atkinson had a full and fair opportunity to litigate his claim. The district court properly found that he [was not entitled to relief]. Accordingly, Atkinson is not entitled to relief under Fed.R.Civ.P. 60(b)(6).

*Atkinson,* 43 F.3d at 373–74. Thus, the "any other reason" ground has been significantly restricted by applicable case law.

■ Having identified the standards applicable to "motions to reconsider" under either of the possible rules of procedure that have been construed to provide for such motions, the court may now make a better than "unenlightened guess" as to the basis for plaintiff's motion. *Compare Sanders,* 862 F.2d at 168. The court finds that plaintiff has stated no "exceptional circumstances" which "bar adequate redress" of his claims. *Atkinson,* 43 F.3d at 373–74. The avenue of appeal is open to Mr. Reynolds, as is pursuit of all but his RICO claims in state court where, even with this restriction, he may assert claims encompassing the same conduct and injuries asserted to be the basis for his RICO claims. Therefore, the court concludes that Rule 60(b) provides Mr. Reynolds with no relief in this case. The court will proceed to analyze Mr. Reynolds's "motion to reconsider" solely on the basis of whether or not the court committed a "manifest error of law or fact" entitling Mr. Reynolds to relief under *Fed.R.Civ.P.* 59(e).[1]

### B. "Manifest" Error

Whether the court properly dismissed plaintiff's complaint turns entirely on the question of whether the plaintiff sufficiently alleged "conduct" of the asserted RICO enterprise, and, more specifically, whether he alleged conduct of the enterprise by the "insider" RICO defendant, Barbara Orzechowski. *See Nolte v. Pearson,* 994 F.2d 1311, 1317 (8th Cir.1993) (where the record is "devoid of evidence that defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise," the court need

not reach any other element of the § 1962(c) RICO claim before dismissing it). Mr. Reynolds has not urged the court to reconsider its ruling that RICO defendants Mr. Condon and Ms. Reynolds conducted only their own affairs and not those of the law firm. If the court was correct in its determination that Ms. Orzechowski did not conduct the affairs of the law firm, then neither of the RICO claims is viable and the court will not exercise supplemental jurisdiction over the state-law claims. Only if the court incorrectly decided the "conduct" issue will it be necessary for the court to reach any other issue raised by the parties in their briefs on the motion to reconsider.

Mr. Reynolds asserts that the court applied an incorrect legal standard in its determination on the "conduct" issue. The court concedes that application of an incorrect legal standard would be a "manifest legal error" entitling the plaintiff to alteration of the judgment pursuant to *Fed.R.Civ.P.* 59(e), but only if the result reached under the correct legal standard would have been different.

### 1. The test of "conduct" of a RICO enterprise by "insiders" or "outsiders"

■ Mr. Reynolds's principal argument for reconsideration is that the court applied the standard for "conduct" of a RICO enterprise articulated in *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), but that standard is applicable only to the conduct of the asserted RICO enterprise by "outsiders," such as defendants Reynolds and Condon, but not to "insiders," such as

---

1. However vague the basis for Mr. Reynolds's motion may be, it is very clear that he does not assert any "newly discovered evidence" as the basis for his motion. Instead, he asserts that the court improperly overlooked some of his factual allegations, did not construe those allegations as true, or did not draw sufficient inferences from those allegations. However, the court finds that many of the "allegations" to which Mr. Reynolds points, now as before, are merely conclusory. The court was under no obligation to treat such conclusory allegations as true on a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6), *see Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the

facts"), and is under no greater obligation to do so on a motion to reconsider pursuant to *Fed. R.Civ.P.* 59(e). *See Hagerman,* 839 F.2d at 414 (relief under Rule 59(e) requires *"manifest"* error of *fact*). The court stands by its conclusion that giving Mr. Reynolds all reasonable inferences due his allegations of *fact,* he failed to allege "conduct" of the alleged RICO enterprise by the RICO defendants *if* the court indeed applied the correct legal standard to determination of what is "conduct" of a RICO enterprise and *if* the court properly applied that standard. The court perceives the legal standard for "conduct" of a RICO enterprise and application of that standard here to be the only issues it must consider properly and fairly to dispose of Mr. Reynolds's motion.

defendant Orzechowski, who was a partner in the law firm identified as the RICO enterprise. Plaintiff cites as supporting his position that *Reves* is not applicable to conduct by "insiders" *United States v. Hurley,* 63 F.3d 1, 9 (1st Cir.1995); *MCM Partners v. Andrews–Bartlett & Assocs.,* 62 F.3d 967, 979 (7th Cir.1995); *United States v. Oreto,* 37 F.3d 739, 750 (1st Cir.1994); and *Napoli v. United States,* 32 F.3d 31, 34–36 (2d Cir. 1994). This court concludes, however, that although these cases identify difficulties in applying the *Reves* test to "insiders," they do not establish a different standard or establish that application of the *Reves* standard to "insiders" is incorrect.

First, the *Reves* decision itself brooks no exceptions. As this court observed in the order plaintiff seeks to reconsider, *Reynolds,* 908 F.Supp. at 1514–1515, in *Reves,* the Supreme Court carefully parsed the language of the statute to develop its test for the "conduct" element, which it held was the distinguishing element of a § 1962(c) claim. *Reves,* 507 U.S. at 182, 113 S.Ct. at 1171–72. That test for liability under § 1962(c) required that "one ha[ve] participated in the operation or management of the enterprise itself." *Id.* at 183, 113 S.Ct. at 1172 (approving the test applied by the Eighth Circuit Court of Appeals below in *Arthur Young & Co. v. Reves,* 937 F.2d 1310 (8th Cir.1991)). The Supreme Court addressed the "insider" and "outsider" issue in the following terms, *concluding that this test did not improperly limit the statute's ability to reach "outsiders,"* which plainly indicates the applicability of the test to "insiders" in the first instance:

> First, [the argument that the test only reaches "insiders," but doesn't reach "outsiders"] ignores the fact that § 1962 has four subsections. Infiltration of legitimate organizations by "outsiders" is clearly addressed in subsections (a) and (b), and the "operation or management" test that applies under subsection (c) in no way limits the application of subsections (a) and (b) to "outsiders." Second, § 1962(c) is limited to persons "employed by or associated with" an enterprise, suggesting a more limited reach than subsections (a) and (b), which do not contain such a restriction.

> Third, § 1962(c) cannot be interpreted to reach complete "outsiders" because liability depends on showing that the defendants conducted or participated in the conduct of the *"enterprise's* affairs," not just their *own* affairs. Of course, "outsiders" may be liable under § 1962(c) if they are "associated with" an enterprise and participate in the conduct of its affairs—that is, participate in the operation or management of the enterprise itself. . . .

> In sum, we hold that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," § 1962(c), one must participate in the operation or management of the enterprise itself.

*Reves,* 507 U.S. at 183, 113 S.Ct. at 1173 (emphasis in the original). This statement of the meaning of "conduct" under § 1962(c) is definitive, comprehensive, and in no wise limited, as plaintiff would have it, to "outsiders." This court committed no "manifest legal error," *Hagerman,* 839 F.2d at 414, in applying that test to conduct of the asserted RICO enterprise by the "insider" defendant, Ms. Orzechowski.

What of the decisions of the courts of appeals that plaintiff cites as contradicting this conclusion? Both of the decisions of the First Circuit Court of Appeals, *Hurley,* 63 F.3d at 9, and *Oreto,* 37 F.3d at 750, apply *an interpretation* of the *Reves* test of "conduct" for an "insider" articulated as " 'plainly integral to carrying out' the racketeering activities," but it is *racketeering activities of the allegedly corrupt enterprise* that are in question. *Hurley,* 63 F.3d at 9 (citing *Oreto,* 37 F.3d at 750). Nothing about *Oreto* or *Hurley* indicates that an "insider," any less than an "outsider," must be shown to have "ha[ve] participated in the operation or management of the enterprise itself." *Reves,* 507 U.S. at 183, 113 S.Ct. at 1172. These cases do not stand for the proposition that *Reves* is inapplicable to "insider" cases.

A careful reading of *MCM Partners,* 62 F.3d at 979, also demonstrates that the case does not, as plaintiff would have it, distinguish between legal standards for "outsiders" as in *Reves* and some other standard for

"insiders," but instead *applies* the *Reves* test for "insiders," which the Seventh Circuit Court of Appeals identifies as "operating" the "enterprise," but including "operating" the "enterprise" under the "direction of upper management." *MCM Partners,* 62 F.3d at 979 (quoting and applying *Reves,* 507 U.S. at 184 & n. 9, 113 S.Ct. at 1173 & n. 9).

Finally, *Napoli,* 32 F.3d at 34–36, does not suggest a different standard for "insiders," either. Defendants correctly point out that plaintiff has grossly mischaracterized this case. *Napoli* is not a case in which the court approved a jury instruction that instructed the jury that the prosecution is not required to prove that the defendant participated in the management and control of the enterprise. *See Napoli,* 32 F.3d at 34, and Plaintiff's Brief, at 3. Rather, *Napoli* is a *"habeas corpus"* action, pursuant to 28 U.S.C. § 2255, in which the court of appeals noted that the instruction offered may have been a correct statement of the law *prior to Reves,* which had not yet been handed down, but concluded that the instruction was completely incorrect under *Reves. Napoli,* 32 F.3d at 34. Furthermore, the *Napoli* court assumed it was error to give such an instruction even at the time it was given. *Id.* at 35. Thus, it is apparent that *Napoli* does not recognize a different test for "insiders" than for "outsiders." Therefore, the court did not commit any "manifest legal error," *Hagerman,* 839 F.2d at 414, even in light of the cases cited by plaintiff, in applying the "operation and management" test of *Reves* to the conduct element for all RICO defendants in this case, "insiders" and "outsiders" alike. Plaintiff's assertion to the contrary teeters precariously on the limits of the frivolous.

### 2. *Application of the test*

However, even though the court applied the proper test to the question of whether or not defendant Orzechowski "conducted" the asserted RICO enterprise, if the court misapplied that test, or manifestly came to the wrong conclusion in its application, plaintiff might still have the necessary "manifest error of law or fact" as grounds for reconsideration and setting aside of the court's order dismissing this action. *Hagerman,* 839 F.2d

at 414. However, the court finds no such manifest error in its application of the proper test here.

■ The point the court finds the plaintiff has consistently missed is that there is no necessary identity between the affairs of the asserted RICO enterprise, the law firm, and the affairs in furtherance of which plaintiff has alleged various RICO predicate acts. Plaintiff cites *Napoli,* in particular, as establishing that the affairs of a law firm are "trying cases and obtaining settlements," *see Napoli,* 32 F.3d at 36, and that this is what plaintiff alleges defendant Orzechowski was doing during her representation of Lisa Reynolds. There are at least two responses to this argument.

First, one must not overlook the importance of the plurals, "cases" and "settlements," in the *Napoli* case as opposed to the singular, "case" and "settlement," involved in the present RICO allegations. In *Napoli,* the court of appeals concluded that the defendants had properly been convicted of conducting the RICO enterprise, a law firm, because they "discharged their responsibility" in trying and settling cases "through a pattern of illegal acts." *Napoli,* 32 F.3d at 36. The court identified several lawsuits in which each of the defendant attorneys had engaged in a variety of predicate acts to obtain favorable resolutions, and, indeed, to prosecute wholly fraudulent claims. *Id.* One attorney acting on behalf of one client or set of clients in a single lawsuit is an attorney conducting the affairs *of the clients,* while one attorney conducting several lawsuits, and routinely using foul means to do so, may be conducting the affairs *of the law firm.* This conclusion is by no means a reinstatement of the "multiple-scheme" test this court rejected when raised by one of the defendants in support of its motion to dismiss, a test now specifically rejected by both the Eighth Circuit Court of Appeals and the Supreme Court. *See Reynolds,* 908 F.Supp. at 1514–1515 (citing *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), and *Police Retirement Sys. of St. Louis v. Midwest Investment Advisory Serv., Inc.,* 940 F.2d 351 (8th Cir.1991)). In *Napoli,* the defen-

dant attorneys were involved in *a single scheme* to further the interests and affairs of the RICO enterprise law firm *through a pattern of predicate acts* that involved fraudulent and illegal acts in the course of their prosecution of several lawsuits. *Napoli,* 32 F.3d at 36. To put it another way, in *Napoli,* the various lawsuits were predicates in furtherance of the single scheme. There is absolutely no indication in the complaint, in the form of an allegation of *facts* that must be taken as true, that anything like the scheme in *Napoli* was an affair of the law firm asserted to be the RICO enterprise here.[2]

Second, the Supreme Court in *Reves* reiterated the importance of distinguishing between the affairs of the enterprise and the affairs of clients of the enterprise. *Reves,* 507 U.S. at 184, 113 S.Ct. at 1173. The court cannot conceive of general acceptance of plaintiff's conception of RICO, in which there is necessarily an identity between a client's affairs and the enterprise's affairs when the enterprise is a service business. A conception of RICO as creating a cause of action and allowing the plaintiff to invoke special liability every time a representative of a service business represents or acts on behalf of a client, and either the client or the representative employs foul means to conduct the client's affairs, would extend RICO well beyond the excessively broad boundaries it already enjoys. The breadth of RICO may not be a defect, *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 481, 105 S.Ct. 3275, 3277, 87 L.Ed.2d 346 (1985), but neither Congress nor the Supreme Court has ever suggested that RICO's reach should be limitless. Indeed, identity of a client's affairs and affairs of the enterprise would surely cross the limits the Supreme Court has maintained. *Reves,* 507 U.S. at 184, 113 S.Ct. at 1173 (continuing to distinguish between affairs of the enterprise

and affairs of the defendant in a service business context of accountants acting on behalf of an alleged RICO enterprise). Although this limitation was reasserted in an "outsider" case, in which the RICO enterprise was not defined as the RICO defendants' own firm, the limitation needs must apply in the present situation as well, because the client-business relationship remains the same even where the RICO enterprise is defined differently.

■ The plaintiff seems to argue that the conclusion about conduct of the enterprise should necessarily be different if the attorney who is the RICO defendant is also a partner in the law firm identified as the RICO enterprise. Plaintiff points again and again to allegations that Ms. Orzechowski, "as a partner in the law firm," engaged in what plaintiff asserts to be a RICO predicate act. However, the mere allegation that someone is a partner in a law firm does not mean that everything that partner does is conducting the affairs of the law firm. This is simply another facet of the same misconception: that everything a representative does to conduct the affairs of a client necessarily is conducting the affairs of the representative's business. The court therefore reaffirms its prior conclusion that as a result of her status as a partner in the law firm, Ms. Orzechowski did not necessarily "conduct" the enterprise for the purposes of a RICO claim. In other words, her status as a partner does not mean that she "conduct[ed] the affairs of [the Law Firm] by ... acting in a *managerial* capacity, *through racketeering activity*." *Reves,* 507 U.S. at 183, 113 S.Ct. at 1171–72 (quoting 116 Cong.Rec. 35196 (1970); first emphasis added by the Supreme Court and second emphasis added by this court here). There are no allegations that Orzechowski

---

2. The court can conceive of a situation in which a single lawsuit for a single client could indeed constitute the "affairs" of a law firm identified as the RICO enterprise. Such a situation, it would seem to the court, however, would involve the dedication of a law firm to prosecuting the legal affairs of that client through illegal means or conducting affairs of the client that were illegal in the first place through misapplication of legal means. *See Broyles v. Wilson,* 812 F.Supp. 651 (M.D.La.1993) (requiring such an arrangement before a law firm could be a RICO enterprise, finding that the plaintiff must "allege that [the law firm] existed for the purpose of effectuating [the RICO defendant's] scheme to defraud [the plaintiff]"). Although the court has rejected such an arrangement as necessary to the allegation of an adequate RICO claim, it recognizes that such an arrangement would be sufficient, because in such a case, there would be an identity of the affairs of the RICO enterprise and the affairs of the client. That is not the situation here.

conducted or managed the affairs *of the Law Firm* through *racketeering activity, id.* at 183, 113 S.Ct. at 1172 (liability under § 1962(c) extends to "one [who] has participated in the operation or management of the enterprise itself" through a pattern of racketeering activity), although there are certainly allegations that she conducted the affairs of Condon and Lisa Reynolds through activities falling within the definition of racketeering activity in § 1961. What is alleged is merely that Orzechowski used the facilities of the law firm to draft documents that were useful or necessary. to the extortionate scheme Bryan Reynolds alleges. The court concludes that, as a matter of law, such allegations are insufficient to meet the "conduct" element of a RICO claim. Simply by alleging that an attorney or partner in a law firm acted on behalf of a client, whether the means used were fair or foul, and that in doing so, the attorney or partner in the firm used the facilities of the firm, does not allege that the attorney has conducted *the affairs of the law firm* in which she is a partner *through racketeering activity. Id.*[3] Upon reconsideration, the pleading of the RICO claim is therefore deficient as a matter of law and must be dismissed. *Nolte v. Pearson,* 994 F.2d 1311, 1317 (8th Cir.1993) (where the record is "devoid of evidence that defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise," the court need not reach any other element of the § 1962(c) RICO claim before dismissing it). There has been no "manifest error of law or fact." *Hagerman,* 839 F.2d at 414. Consequently, there are no grounds for altering or amending the judgment in this case, *Fed.R.Civ.P.* 59(e), and plaintiff's motion requesting that the court do so must be denied.

### III. CONCLUSION

The court concludes that, contrary to plaintiff's assertion, the court applied a proper legal standard to the "conduct" element of his RICO claims, causing the court to dismiss the plaintiff's RICO claims, and, consequently, to dismiss plaintiff's complaint in its entirety. Furthermore, the court concludes that it properly applied that correct legal standard. There being no "manifest error of law or fact," plaintiff's motion to reconsider is **denied.**

**IT IS SO ORDERED.**

---

**3.** Again, setting aside other difficulties with such a pleading, if it had been pleaded and could be shown that the law firm and the client formed an association-in-fact for the purposes of pursuing a shared scheme, and if the complaint alleged conduct of the associational enterprise through racketeering activity by clients and an attorney, the complaint might allege the conduct of the right enterprise's affairs through the necessary, illegal means. Such is not pleaded here.